Nicki M. SNIEZEK and F.A.C.E. Trading, Inc., d/b/a Face Card Promotions, a Wisconsin corporation, Plaintiffs–Appellants,

v.

COLORADO DEPARTMENT OF REVENUE and Colorado Liquor Enforcement Division, Defendants–Appellees.

No. 03CA2116.

Colorado Court of Appeals, Div. III.

May 5, 2005.

are paper tickets that contain a coupon on one side and a cash prize game on the other. A customer purchases an Ad–Tab from the machine for one dollar per tab.

The cash prize game contains a combination of symbols that are revealed when the purchaser opens the tabs. Various combinations of symbols result in differing levels of prizes, with the prizes ranging from one dollar to five hundred dollars. The purchaser of a "winning" Ad–Tab can redeem the ticket for a cash prize by presenting it to an employee of the establishment where it was purchased. A game piece can also be obtained from F.A.C.E. by requesting one via the mail.

The coupons on the reverse side of the Ad–Tab provide a discount for merchandise that can be obtained when the customer tenders the coupon and the purchase price to F.A.C.E. or another merchant. Occasionally, more than one coupon is required to purchase the merchandise.

Plaintiff Sniezek operates under a liquor license issued by defendants and therefore is subject to their regulations. After she purchased and installed an Ad–Tab machine in her bar, defendants determined that the machine and Ad–Tabs were illegal gambling devices. Accordingly, they seized the Ad–Tab machine, along with the Ad–Tabs and money that were in it at the time.

Plaintiffs instituted this action seeking return of the property, a declaration that the machine and associated Ad–Tabs were not illegal gambling devices, and injunctive relief. Defendants counterclaimed, seeking forfeiture of the machine, Ad–Tabs, and money. Following a bench trial, the court found that the machine and Ad–Tabs were illegal gambling devices subject to seizure and disposal by defendants, and the court denied plaintiffs' request for an injunction. This appeal followed.

James R. True, Aspen, Colorado, for Plaintiffs–Appellants.

John W. Suthers, Attorney General, Robert H. Dodd, Jr., Assistant Attorney General, Denver, Colorado, for Defendants–Appellees.

CASEBOLT, J.

In this declaratory judgment and replevin action, plaintiffs, Nicki M. Sniezek and F.A.C.E. Trading, Inc., appeal the judgment in favor of defendants, the Colorado Department of Revenue and the Colorado Liquor Enforcement Division, in which the court determined that the machines and materials employed by plaintiffs constituted gambling devices under § 18–10–102(3), C.R.S.2004. We affirm.

F.A.C.E. manufactures a machine that dispenses "Ad–Tabs" and sells these machines to owners of restaurants and bars. Ad–Tabs

I.

Plaintiffs first contend that the trial court erred, as a matter of law, in its determination that the Ad–Tabs and the machines that sell them constitute gambling devices under § 18–10–102(3). We disagree.

Initially, the parties disagree concerning the applicable standard of review. Plaintiffs assert the matter involves a mixed issue of fact and law. In contrast, defendants contend that the determination is strictly factual and that we should defer to the trial court's conclusions. We need not determine this issue because, under either standard of review, we would reach the same result. *See E–470 Pub. Highway Auth. v. 455 Co.*, 3 P.3d 18 (Colo.2000)(when the issue before the appellate court is a mixed question of law and fact, the court may take a number of different approaches).

█ Under the Colorado Liquor Code, § 12–47–901(5), C.R.S.2004, with exceptions not relevant here, a licensed retailer may not authorize or permit gambling or the use of any gambling machine or device on its premises. "Gambling," as pertinent here, means "risking any money ... or other thing of value for gain contingent in whole or part upon lot, chance, [or] the operation of a gambling device." Section 18–10–102(2), C.R.S.2004. Accordingly, gambling requires the existence of the following three elements: (1) risking any money or thing of value; (2) for gain; (3) contingent in whole or in part upon lot, chance, or the happening of an event over which the person taking a risk has no control. *See Charnes v. Central City Opera House Ass'n*, 773 P.2d 546 (Colo.1989).

A "gambling device" is "any device, machine, paraphernalia, or equipment that is used or usable in the playing phases of any professional gambling activity, whether that activity consists of gambling between persons or gambling by a person involving the playing of a machine." Section 18–10–102(3).

█ Here, with record support, the trial court made the following factual determinations: (1) the printing on the machine advertising the chance to win money is more prominent than the advertising for the opportunity to purchase merchandise with a coupon; (2) the layout of the coupons, their size and color, and the method for determining a winner are nearly identical to a Colorado scratch lottery ticket; (3) the products available for purchase through the coupons are not displayed anywhere on or near the machine such that it is impossible for a con-

sumer to know in advance what type of product the coupon is for; (4) F.A.C.E. does not keep track of how much revenue is generated by the sale of merchandise and considers the cost of the merchandise to be an expense associated with doing business; and (5) in 2002, F.A.C.E. sold over 20 million Ad–Tabs, but only received 40 requests for free entries. Because these findings are supported by the evidence in the record, we will not disturb them on review.

Applying the statutory provisions defining gambling devices to these facts, it is undisputed that a customer can win up to $500 with the purchase of one Ad–Tab and the machine dispenses them randomly, without any input from the purchaser. Thus, both the "for gain" and "contingent upon chance" requirements are clearly met. The remaining issue is whether a customer is risking his or her money by the purchase.

Plaintiffs contend that, because the customer is purchasing a coupon that has a value in excess of the one-dollar purchase price, the customer is not risking anything. We disagree.

Here, the items to be purchased with the coupons are not displayed anywhere near or on the machine, nor does a customer know what the coupon is for before purchasing the Ad–Tab. Thus, the customer does not know what product the coupon will enable him or her to purchase, what the price for the product will be, or whether more Ad–Tabs must be purchased to qualify. Hence, the customer takes a risk upon the purchase of the Ad–Tab. In addition, the machine advertises the chance to win money, and the emphasis in the advertisement is the "win cash" slogan, as opposed to the purchase of merchandise.

For these reasons, we conclude that plaintiffs' machine is designed to promote the sale of the "win cash" feature of the Ad–Tab, not the coupon feature, and that the coupon is merely incidental to the game portion of the ticket. Accordingly, we agree with the trial court that the Ad–Tabs and machines constitute gambling devices that are illegal under the Colorado Liquor Code, § 12–47–901(5), C.R.S.2004. *Cf. F.A.C.E. Trading, Inc. v. Carter*, 821 N.E.2d 38 (Ind.Ct.App.2005)

(holding that Ad–Tab machines are illegal gambling devices under Indiana statutes). Therefore, the trial court did not err in declaring that the machine, Ad–Tabs, and money were subject to confiscation and forfeiture.

Relying on *Cross v. People*, 18 Colo. 321, 32 P. 821 (1893), plaintiffs contend that because prospective purchasers can obtain a free game piece by mail, the element of risk is eliminated and, therefore, the machines and the Ad–Tabs are not gambling devices. Plaintiffs' reliance is misplaced.

In *Cross*, the defendants were in the primary business of selling shoes and distributed business cards advertising the shoe store and providing a chance to win a prize. The cards were distributed to paying customers and were also given to anyone who registered at the shoe store or mailed in a request. Although the court acknowledged that a chance to win could be obtained independent of a purchase and that such a procedure negated the element of risk, it noted that the chance to win was part of the promotion of the defendants' product, shoes.

Here, however, F.A.C.E. is not engaged in the business of selling a product, or even arguably of selling advertising. In fact, it could not provide the court with information on how much merchandise it sold and has not asserted that it generates any revenue from selling advertising on the coupons. Accordingly, *Cross v. People, supra*, is distinguishable.

Plaintiffs nevertheless assert that the game portion of the coupon is similar to the type of promotional methods used by national merchandisers, such as McDonald's, where a customer gets a game piece upon buying a specific sandwich or drink. We disagree.

The important distinction is, again, the connection between the game and the sale of a business's product. The sanctioned promotions involve the sale of the company's primary product, a meal or drink, coupled with a chance to win a prize. The customer knows what is being purchased. And the business is promoting its primary commercial activity through the game.

In contrast, plaintiffs' machines involve the promotion of a prize with the product being unrelated to their business as the promoter or distributor, and the customer does not know what product is being purchased. As noted above, plaintiff F.A.C.E. is not in the business of selling either merchandise or advertising. Accordingly, because the game feature on the Ad–Tabs does not promote another primary business of either plaintiff, it is not analogous to the specified types of national promotions.

## II.

Plaintiffs next contend that the trial court erred by failing to admit evidence and render a declaratory judgment concerning the legality of proposed new, modified procedures, rules, and promotional materials. We disagree.

Actions for declaratory judgment are meant to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. Section 13–51–102, C.R.S.2004. A court's jurisdiction exists in such actions only if the case presents a currently justiciable issue or an existing legal controversy, rather than the mere possibility of a future claim. *Bd. of County Comm'rs v. Park County Sportsmen's Ranch, LLP*, 45 P.3d 693, 698 (Colo. 2002). For a court to issue a declaratory judgment, an actual legal controversy must be present and not a mere possibility of a future legal dispute over some issue. *Cacioppo v. Eagle County Sch. Dist. Re–50J*, 92 P.3d 453 (Colo.2004).

Here, as part of their response to defendants' motion for summary judgment and their motion in limine, plaintiffs announced · proposed changes to their procedures, rules, and promotional materials, and asked the court to determine whether such changes would be legal. The trial court reasoned that any decision with regard to these matters would be advisory only and declined to render such an opinion.

We agree with the trial court. A decision involving proposed procedures, rules, and materials that were not the subject of the seizure by defendants would address the pos-

sibility of a future legal dispute, not a present controversy. Hence, the court did not abuse its discretion. *See Cacioppo v. Eagle County Sch. Dist. Re–50J, supra.*

### III.

Plaintiffs contend the trial court erred in excluding the testimony of their expert witness. We disagree.

 CRE 702 governs a trial court's determination as to whether expert testimony should be admitted. The inquiry should focus on whether the substance of the testimony will be helpful to the trier of fact and whether the witness is qualified to render an expert opinion on the subject in question. *People v. Johnson,* 74 P.3d 349 (Colo.App. 2002).

 When the trial court is sitting as the fact finder, it need not admit expert testimony on an issue that it is capable of resolving itself. *See Tri–State Generation & Transmission Co. v. City of Thornton,* 647 P.2d 670 (Colo.1982); *Zick v. Krob,* 872 P.2d 1290 (Colo.App.1993).

Here, plaintiffs sought to introduce the testimony of an expert witness who had spent a number of years as an agent with the FBI, investigating gambling operations. Plaintiffs proffered that the witness would testify that "the sale of ad-tabs through the vending machine that was confiscated did not violate any Colorado gambling statute and was not illegal gambling."

We perceive no abuse of discretion in the trial court's decision to exclude the testimony of this witness. The testimony would have encompassed the ultimate legal determination that the trial court was capable of determining itself. *See Zick v. Krob, supra.*

The judgment is affirmed.

Judge DAILEY and Judge PICCONE concur.