The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Kristina TAYLOR, Defendant–Appellant.

No. 04CA0179.

Colorado Court of Appeals, Div. V.

Oct. 5, 2006.

Rehearing Denied Nov. 30, 2006.

Certiorari Dismissed Feb. 14, 2007.

John W. Suthers, Attorney General, Denver, Colorado; Kathleen M. Byrne, Special Assistant Attorney General, Boulder, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Andrea R. Manning, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Prior Opinion Announced: June 30, 2005, *WITHDRAWN*

Petition for Rehearing *GRANTED*

Opinion by Judge ROY.

Defendant, Kristina Taylor, appeals the judgment of conviction entered upon jury verdicts finding her guilty of forgery, § 18–5–102(1)(c), C.R.S.2006, a class 5 felony, and attempting to influence a public servant by unlawful means, § 18–8–306, C.R.S.2006, a class 4 felony. We reverse and remand for a new trial.

Pursuant to the conditions of a deferred judgment and sentence in an unrelated case, defendant was ordered to perform eighty hours of useful public service. A county caseworker was assigned to supervise defendant's performance of this obligation.

Defendant proposed performing her service at a local church. The caseworker provided her with the necessary forms to be completed by the church and returned to the county agency (the agency) for verification after the service was performed.

A few months later, the caseworker received the forms back. One form was signed by defendant and by a person identified as the "pastor" of the church. The second form was also signed by the "pastor," indicating defendant had done an exemplary job working in "the church food bank." A caseworker contacted the church to verify the informa-

tion and discovered that there was no "pastor" or other employee of the church by the name stated on the forms. Based on this information, the caseworker began an investigation that culminated in defendant being charged.

At trial, the pastor testified that the church only allowed persons to perform useful public service in its food and clothing bank. He further testified that he had not signed either of the two forms submitted to the agency and that he had met defendant for the first time approximately one month after the forgery investigation had begun. At that meeting, defendant had told the pastor that she had performed her service for the church by collecting donations in front of a supermarket. Defendant also stated that she had done this solicitation work pursuant to the directions of a woman who had identified herself as an administrative assistant at the church.

Several months later, and after she had been charged and appeared in court, defendant returned to the church, reviewed a directory with photographs of church members, and identified the church custodian as the person who, along with a woman named "Deborah," had driven her to the supermarket where defendant claimed to have collected donations.

The pastor testified that, during one of his two meetings with defendant, she told him that Deborah had filled out the forms and signed them. He further testified that he knew the church custodian was involved in a relationship with a woman named Deborah, whom he described as a "street person" who panhandles on occasion. At trial, Deborah testified that she had never met defendant and that she had never had any involvement in supervising persons who were performing useful public service.

Defendant identified Deborah as the woman who had assigned to her and monitored the supermarket fundraising she had performed to fulfill her service. Defendant further testified that she had provided the forms to Deborah and that, following the completion of her service, Deborah had told her she would submit the forms to the agency. Defendant also testified that she received a copy of the forms in the mail and had noted the discrepancy as to how she had performed the service.

## I.

Defendant first argues that the evidence is insufficient to support the jury's verdicts. While the evidence was certainly not overwhelming, we disagree with defendant's contention that it was insufficient.

As relevant here:

(1) A person commits forgery, if, with intent to defraud, such person falsely makes, completes, alters, or utters a written instrument which is or purports to be, or which is calculated to become or to represent if completed:

. . .

(c) A[n] . . . instrument which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status . . . .

Section 18–5–102.

The offense of attempting to influence a public servant by unlawful means is defined as follows:

Any person who attempts to influence any public servant by means of deceit . . . with the intent thereby to alter or affect the public servant's decision, vote, opinion, or action concerning any matter which is to be considered or performed by him or the agency or body of which he is a member, commits a class 4 felony.

Section 18–8–306.

■ In assessing the sufficiency of the evidence supporting a guilty verdict, a reviewing court must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt. In applying this standard, we must give the prosecution the benefit of every reasonable inference that might fairly be drawn from the evidence. *Kogan v. People*, 756 P.2d 945 (Colo.1988).

At the outset, we reject defendant's argument that, in closing argument, the prosecu-

tor conceded the insufficiency of the evidence as to the forgery charge by stating that there was no evidence indicating defendant was the person who had completed the forms. When read in context, it is apparent the prosecutor made this statement to emphasize, correctly, that a person acting with the requisite intent can commit forgery by uttering a false written instrument prepared by another.

■ We also reject defendant's suggestion that the forms do not fall within the ambit of the forgery statute. According to defendant, the forms were not "instrument[s] which . . . evidence[d], create[d], transfer[ed], terminate[d], or otherwise affect[ed] a legal right, interest, obligation, or status." However, it is beyond dispute that defendant's personal liberty interest constituted a legal right which clearly was subject to termination if she failed to perform the eighty hours of useful public service that were documented in the forms submitted to the agency. Accordingly, we reject this argument.

■ Turning to the sufficiency of the evidence, we acknowledge that the proof of defendant's guilt was circumstantial and that there was evidence which, if believed, might have resulted in an acquittal. However, as to the sufficiency of the evidence, the law makes no distinction between direct and circumstantial evidence. *People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973). This case turns on credibility, and the jury must have concluded that Deborah was a more credible witness than defendant. As an appellate court, it is not our role to reweigh the evidence or judge the credibility of witnesses. *People v. Rivas*, 77 P.3d 882 (Colo.App.2003).

We have already summarized the evidence presented at trial. We reject defendant's suggestion that the prosecution was obligated to prove that she mailed the forms to the agency or that she explicitly directed someone else to mail the forms on her behalf. Neither the forgery statute nor the statute criminalizing the improper influence of a public servant contains such a requirement.

■ In this case, there is sufficient evidence in the record to support the jury's finding that defendant caused a false written instrument to be delivered to a public serv-

ant with the intent of altering the public servant's decision relating to the termination of defendant's liberty interest. Accordingly, we conclude the evidence is sufficient to support the jury's verdicts.

## II.

Defendant next argues that the trial court committed reversible error by allowing an investigator from the district attorney's office to comment on the strength of the evidence he had gathered and permitting him to explain why he did not obtain a handwriting analysis. We address the issue because it may arise on retrial. We disagree.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. If testimony is admissible under CRE 401, the court must then determine whether the probative value of that evidence is substantially outweighed by the danger of unfair prejudice. CRE 403.

■ Trial courts have considerable discretion concerning the admissibility of evidence and the determination of its relevancy and probative value. In reviewing a trial court's ruling on admissibility of evidence under CRE 403, we must afford the evidence the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected. *People v. Johnson*, 74 P.3d 349 (Colo.App. 2002). To constitute an abuse of discretion, the trial court's evidentiary ruling must be shown to be manifestly arbitrary, unreasonable, or unfair. *People v. Martinez*, 83 P.3d 1174 (Colo.App.2003).

■ The concept of "opening the door" is a court-promulgated curative measure that is not easily defined. The concept represents an effort by courts to prevent one party from gaining an unfair advantage by presenting evidence that, without being placed in context, creates an incorrect or misleading impression. *People v. Melillo*, 25 P.3d 769 (Colo.2001).

Here, during cross-examination of the district attorney's investigator, defendant asked several questions establishing that the investigator had not conducted a handwriting analysis of the documents. In response, the investigator stated he felt there was no need for such a comparison because "there was enough evidence to proceed." Defendant did not object to this response.

During redirect examination, the investigator testified, over defendant's objections, that he had not conducted the handwriting comparison because Deborah "had been very consistent" in her statements to him, he felt he had done "everything" he needed "to file the case and to proceed," and he concluded he "had plenty of evidence to proceed."

■ In light of defendant's attack on the investigator's competence, we conclude the trial court acted within its discretion by allowing the prosecution to elicit the investigator's explanation of why and how he had limited his investigation in the manner that he did.

Moreover, the jury instructions in this case informed the jurors that they had the exclusive authority to determine the strength of the prosecution's evidence, and we have no reason to believe the investigator's testimony caused the jurors to abandon this responsibility. *See People v. Harlan,* 8 P.3d 448 (Colo. 2000) (absent evidence to the contrary, an appellate court must presume that a jury follows the trial court's instructions).

■ Finally, because deceitfulness and consistency are not mutually exclusive qualities, we reject defendant's claim that the investigator directly commented on the credibility of another witness.

Accordingly, as we perceive no error in the trial court's evidentiary rulings, we also reject defendant's related claim that the trial court violated her rights to due process. *See People v. Watson,* 53 P.3d 707 (Colo.App. 2001).

### III.

Finally, defendant contends her convictions must be reversed because the prosecutor improperly introduced, and relied upon in closing argument, evidence showing that defendant exercised her right to remain silent. We agree that the prosecutor's reliance on evidence of defendant's post-advisement silence was improper.

Here, the agency received the forms on June 1, 2001, and copies were apparently sent to defendant sometime thereafter. A criminal information was filed on January 28, 2002, and the court ordered that an arrest warrant be issued on April 2, 2002, which was done. Defendant appeared in court on April 4, 2002; was advised of her rights including her Fifth Amendment right to remain silent; and was released on bond. *See* Crim. P. 5(b)(2). There is no indication in this record that defendant was arrested and the arrest warrant was cancelled on April 4, 2002.

■ The Fifth Amendment, provides, among other things, that, "[N]o person ... shall be compelled in any criminal case to be a witness against himself...." A necessary corollary to the right as stated is the right to remain silent. In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that the responses to questions by persons during an "interrogation" while "in custody" would not be admissible unless the person was advised of his or her Fifth Amendment rights. The Court stated:

He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.

*Miranda v. Arizona, supra,* 384 U.S. at 479, 86 S.Ct. at 1630.

Persons charged with an offense are usually advised of their rights, including their right to remain silent, at their first appearance. Crim. P. 5(b)(2). Here, the minute order memorializing defendant's first appearance states that she was so advised.

### A.

We first address the Fifth Amendment implications of defendant's pre-advisement silence and discern no error.

As to the pre-advisement silence, the following exchange occurred during the prosecutor's cross-examination of defendant:

Q: You received [the forms] in the mail?

A: Yes, I did.

Q: When you received [the forms] in the mail, you read [them] to see what [they were], right?

A: Yes.

Q: And you read the statement on [the forms] that says, "Thank you for your help. We really enjoyed you. Worked [sic] the church food bank. Good worker, dependable; signed Marcellus Williams." You read that statement when you received [the forms] in the mail?

A: Yes, I did.

Q: And you didn't know who Marcellus Williams was when you read that?

A: He was the pastor.

Q: Okay.

A: From what I knew, yes.

Q: Okay. You didn't work in the church food bank?

A: No.

Q: And so when you received this and you realized, I didn't work in the church food bank, something is wrong here, you called pretrial release—or Community Justice Services right away?

A: No.

Q: No, you didn't?

A: No.

Q: You called the church right away?

A: No.

Q: You called law enforcement right away?

A: No.

■ No due process violation results when a defendant is cross-examined about pre-advisement silence, because in such circumstances it cannot be said that the government has induced the defendant's silence. *Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982).

The rationale for this rule is that, by deciding to testify, a defendant knowingly subjects himself or herself to cross-examination conducted by the opposing party in furtherance of the truth-finding function of the criminal trial. *Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980). Under *Jenkins,* state courts are free to formulate evidentiary rules governing the admissibility of pre-advisement silence, *Jenkins v. Anderson, supra,* but our supreme court has not had occasion to do so. Therefore, questions concerning the admissibility of such evidence are governed by the relevancy test of CRE 401 and the balancing test of CRE 403.

The question as to pre-advisement silence is whether the testimony is relevant, and, if so, whether it is unduly prejudicial, such that the trial court abused its discretion in admitting it. Defendant raised the issue of her willingness to speak with the authorities at the beginning of the trial. During opening statement, defense counsel faulted the agency that had supervised defendant's performance of the useful public service for having referred the matter to the district attorney's office without first having given defendant an opportunity to explain what had occurred. Defense counsel also stated that defendant "did her own investigation" as soon as she became aware there was a problem.

■ In her direct testimony, defendant admitted that she had received the useful public service form in the mail that contained the inaccurate information. Defendant further testified that she did not contact the pastor until she learned the agency was disputing her completion of the useful public service. In light of this testimony, we conclude that the prosecutor's cross-examina-

tion, asking defendant why she did not also report the inaccuracy in the useful public service form to the agency or to law enforcement officials, was a proper inquiry designed to elicit probative evidence that was not unfairly prejudicial to defendant.

Likewise, because defendant testified on direct examination that, after she became aware charges had been filed, she met with the pastor a second time to try to identify the persons who had supervised her performance of the useful public service, the prosecutor's cross-examination asking defendant why she had not also brought this same information to the attention of the police or the agency supervising her useful public service was a proper inquiry designed to elicit probative evidence that was not unfairly prejudicial to defendant.

Relying on *People v. Quintana*, 665 P.2d 605 (Colo.1983) and *People v. Welsh*, 80 P.3d 296 (Colo.2003), defendant argues that silence is not relevant or probative under any circumstance and, therefore, not admissible.

In *People v. Welsh, supra,* the defendant was charged with murder and asserted the insanity defense. Our supreme court addressed pre-advisement silence in the context of testimony that when the responding officer arrived at the scene, the defendant answered general identification questions, but declined to respond, or respond completely, to questions about what had happened. The prosecution presented this testimony in rebuttal on the theory that the defendant's uncommunicativeness tended to establish her awareness that she had done something wrong, as opposed to her being unaware of the events as though in a dissociative state.

In reversing the conviction, the supreme court was careful to distinguish between rebuttal and impeachment evidence, stating:

> Rebuttal evidence is that evidence which tends to contradict the adverse party's case, whether it be challenging the testimony of a specific witness or refuting the adverse party's entire theory or claim. (citation omitted). Unlike impeachment evidence, which is more focused on the credibility of an individual declarant, "[r]ebuttal evidence goes to the heart of the case, reflecting upon the truth of facts upon

which the other side relies." *People v. Cobb*, 962 P.2d 944, 953 (Colo.1998) (Kourlis, J., dissenting). Thus, rebuttal evidence is essentially substantive in nature.

*People v. Welsh, supra,* 80 P.3d at 304. As rebuttal evidence, the court held that the defendant's pre-advisement silence "[did] not render her sanity at the actual time of the criminal act any more probable that it would [have been] without such evidence." *People v. Welsh, supra,* 80 P.3d at 307.

In *People v. Quintana, supra,* the defendant was charged with burglary and raised the affirmative defense of duress. The defendant did not testify but attempted to assert the defense through others. In its rebuttal case, the prosecution called the arresting officers, who testified that the defendant, while free to say anything he wished, did not say anything about being forced to commit the burglary or show any sign of relief upon the arrival of the officers. The record did not indicate whether the defendant was ever advised of his right to remain silent.

Our supreme court reversed the conviction on the grounds that it was error to permit the introduction of evidence of the defendant's silence, stating, in part:

> When a person is arrested, different considerations prevail than those existing in a noncustodial setting. These considerations directly affect the probative character of post-arrest silence. An arrestee is under no obligation to speak to the police, and his failure to speak to an arresting officer may stem from a number of sources. The arrestee, for example, may find the situation "so intimidating that [he] may choose to stand mute." *United States v. Hale, supra,* 422 U.S. at 177, 95 S.Ct. at 2137, 45 L.Ed.2d at 105. Silence might also be maintained "out of fear or unwillingness to incriminate another." *Id.* Or possibly the arrestee may "simply react with silence in response to the hostile and perhaps unfamiliar atmosphere surrounding his detention." *Id.* Under these circumstances the suspect might well choose to await a more propitious occasion for an explanation of his conduct.

*People v. Quintana, supra,* 665 P.2d at 610–11.

■ Both *Welsh* and *Quintana* are distinguishable. In both cases the defendants did not testify and their silence was offered as separate and independent evidence of their mental state or lack of duress. In neither case was the credibility of the defendant an issue. Relevancy and probative value were considered in that context. Here, defendant testified and the evidence of her pre-advisement silence was elicited in the cross-examination of her for credibility purposes.

Accordingly, we find no error in admitting the cross-examination of defendant as to her pre-advisement silence.

### B.

As to the post-advisement cross-examination of defendant, the following exchange occurred:

Q: You were aware that the charges were filed against you in relation to this case?

A: Not at that time.

Q: ... You were aware of it no later than April of '02, correct?

A: Correct.

Q: And it was after the charges were filed that you went to talk to Marcellus Thomas?

A: Correct.

Q: Reverend Thomas?

A: Correct.

Q: And you told Marcellus Thomas, Reverend Thomas, the story about how you had been conned?

A: Correct.

Q: And you also told Community Justice Services about how you had done this—these hours and that you had been conned?

A: I hadn't spoke [sic] with anyone, and I never told him that I was conned. I let him know that I did community service through a Deborah Ann and that's all I knew her by, and he told me I was conned.

Q: Okay. So when you found that out and you knew charges had been filed against you, you called Community Justice Services and you said, Hey, I did these hours?

A: I never called Community Justice Services.

Q: Okay. You called law enforcement and said, Hey, there is a crime that's been committed?

A: I never called law enforcement.

■ Different constitutional principles govern the use, for impeachment purposes, of a defendant's post-arrest or post-advisement silence. When a defendant takes the stand, the use, for impeachment purposes, of silence that occurred *after* the defendant had been advised of his or her right to remain silent violates the Due Process Clause of the Fourteenth Amendment because an assurance that silence will carry no penalty is implicit in the *Miranda* warnings. *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

■ Under *Fletcher v. Weir, supra,* the extent to which post-advisement silence can be used to impeach a defendant's testimony is a matter left to state courts for resolution under state rules of evidence. *Cox v. People,* 735 P.2d 153, 158 n. 9 (Colo.1987).

■ We begin our analysis by ascertaining the applicable standard of review. "[T]rial errors of constitutional magnitude are compatible with both harmless error and plain error analysis." *People v. Miller,* 113 P.3d 743, 749 (Colo.2005) (quoting *Griego v. People,* 19 P.3d 1, 8 (Colo.2001)).

■ When a defendant fails to make a contemporaneous objection we review the error only under the plain error standard. *People v. Miller, supra.* "Plain" in this context is synonymous with "clear" or "obvious." Plain error is error that is so clear-cut, so obvious, a competent trial judge should be able to avoid it without benefit of objection. *People v. O'Connell,* 134 P.3d 460, 464 (2005)(citing to *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993)); *United States v. Turman,* 122 F.3d 1167 (9th Cir.1997). Plain error requires reversal if, after a review of the entire record, a court can conclude with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the

conviction. *People v. Sepulveda,* 65 P.3d 1002 (Colo.2003).

At the outset, it was error to permit the prosecutor to cross-examine defendant as to her post-advisement silence. *Doyle v. Ohio, supra.* However, defendant did not object to the line of questions; therefore, the standard of review is plain error.

The first step in the analysis is whether the error was "plain." We have already discussed the admission of evidence of defendant's silence on the issues of relevancy and undue prejudice under CRE 401 and CRE 403. The same analysis applies here. That is, absent a *Miranda* advisement, the evidence was relevant and admissible.

Here, according to the record, the trial judge was not the judge who handled the hearing on first appearance when defendant was advised of her right to remain silent. Neither the pastor of the church nor defendant testified as to the dates, or even the month of their meetings. The only previous indication that defendant had been charged before the second meeting was that she arrived with an investigator. Defendant did not testify as to how she found out about the charges having been brought. There is no testimony as to when defendant made her first appearance or what happened at that appearance. The cross-examination at issue moved seamlessly from defendant's pre-advisement silence to post-advisement silence by the prosecutor directing defendant, "when you found that out and you knew charges had been filed against you," without any reference to the first appearance and advisement.

■ Hence, without an objection, the trial court would not be on such notice that the subsequent silence was post-advisement silence. Indeed, appellate counsel did not refer us to an advisement until her petition for rehearing. Therefore, we cannot conclude that the error was not so clear-cut, so obvious, a competent trial judge should have been able to avoid it without benefit of an objection.

Accordingly, we find no plain error in the admission of this testimony. *People v. O'Connell, supra; People v. Petschow,* 119 P.3d 495 (Colo.App.2004).

### C.

The lone remaining issue is whether the prosecutor's references to defendant's post-advisement silence during closing argument is reversible error. Under the circumstances presented here, we cannot conclude that the error was harmless beyond a reasonable doubt.

■ Harmless error is reserved for those cases in which the defendant has preserved his claim for review by raising a contemporaneous objection. To find a constitutional error harmless, an appellate court must conclude beyond a reasonable doubt that the error did not contribute to the guilty verdict. The test is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error. *Bernal v. People,* 44 P.3d 184 (Colo.2002).

During the prosecutor's rebuttal closing argument, the prosecutor stated:

[PROSECUTOR]: ... And the defendant also tells us, You know what? I received those forms in the mail sometime after June.... But she receives these forms in the mail and she doesn't do anything about contacting the Office of Community Justice Service and saying, Hey, look, I received these in the mail—

[DEFENSE COUNSEL]: Objection, Your Honor, may we approach?

THE COURT: No. What's your objection? What's the basis?

[DEFENSE COUNSEL]: Shifting the burden and—

THE COURT: Overruled.

[DEFENSE COUNSEL]: She has a Fifth Amendment right not to go to the police.

THE COURT: Overruled.

[PROSECUTOR]: Community Justice Service is not the police, first of all.

She does not go to Community Justice Service and say, Hey, look, I got these forms in the mail. I just want you all to know that although these are all hours I did, I didn't work in the food bank, so this is wrong. What I did was I held a can.

She doesn't say anything when she gets these forms in the mail.

Those forms are received on June 1 st of '01. The case is filed and she is aware of it no later than April of '02, yet she doesn't go to Community Justice Service and say, What the heck is this case all about? I did this useful public service—

[DEFENSE COUNSEL]: Objection, Your Honor, shifting the burden

THE COURT: Overruled.

[PROSECUTOR]: She doesn't go there and say, I did this useful public service and I want to know what the heck this case is about, because I'm mad as hell. I did those hours. What is this case all about? She doesn't do that. She doesn't go to law enforcement to say that, she doesn't say it to anybody, except for we later hear that she contacts the Reverend Thomas to say, What the heck? That doesn't happen until January of '03.

What's the delay for? Well, ladies and gentlemen, the delay is because she needed time to cook up this scheme that you have all heard about. That's how we know that this defendant, by the names on those documents and by the story that the defendant gave us, why this defendant is the one who submitted those forms, who had those names, those specific names put on those forms, which is directly contradictory of her own testimony about who she understood the supervisor was.

There is your smoking gun, ladies and gentlemen. There's the direct evidence that you want. And it's not just based upon assumptions, it's based upon the only logical conclusion one can reach.

Who has a motive to lie here?

A prosecutor's comments must be evaluated in the context of the argument as a whole. *People v. Isom*, 140 P.3d 100 (Colo.App.2005). Defendant's counsel briefly mentioned defendant's pre-advisement effort to clear up the matter with the pastor. Further, we note that defendant's first objection related to that pre-advisement silence, which we have concluded was properly admitted and was, therefore, properly subject to comment during closing argument. That pre-advisement argument related only to defendant's failure to contract the agency administering the useful public service to object to the characterization of her service.

However, the prosecutor's argument with respect to the post-advisement silence clearly indicates that he knew he was arguing post-advisement silence. His statement that "she is aware of [the filing of the charges] no later than April of '02," is an obvious reference to the first appearance. Then his comments on defendant's delay in following up with the pastor until January 2003 and her failure to contact law enforcement were clearly references to post-advisement silence.

The prosecutor's use of defendant's post-advisement silence was not, in our view, benign, particularly the reference to it being the "smoking gun." From the record, this is a close case the outcome of which turns, in large part, on the credibility of defendant and the woman she claims supervised her useful public service. There are, however, a series of facts or circumstances that appear to bolster defendant's testimony, including her identification of the woman who supervised her, the participation of the janitor who apparently was a close friend of the woman, and the vehicle they drove.

Given that the prosecutor's case was not particularly strong and turned ultimately on credibility, we cannot say that the guilty verdict rendered by the jury was surely unattributable to the prosecution's reference to defendant's post-advisement silence. Therefore, we conclude that the error was not harmless beyond a reasonable doubt.

The judgment is reversed, and the case is remanded for a new trial.

Judge DAILEY and Judge NIETO * concur.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and