The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Tember Terri RECTOR, Defendant–Appellant.

No. 06CA0747.

Colorado Court of Appeals, Div. I.

July 9, 2009.

John W. Suthers, Attorney General, Corelle M. Spettigue, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Paul Grant, Parker, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Tember Terri Rector, appeals the judgment of conviction entered upon a jury verdict finding her guilty on one count of felony child abuse. Because we conclude Dr. Andrew Sirotnak, an expert witness for the People, was improperly permitted to testify that the injuries to the child victim, T.D., were caused by child abuse, we reverse and remand.

## I. Background

Rector and her husband cared for children as foster parents, including T.D., a three-year-old child, in 2004. On February 2, 2004, T.D. was in Rector's care when he was severely injured. Rector was convicted of felony child abuse for causing his injuries, specifically for violating section 18–6–401(1)(a) and (7)(a)(III), C.R.S.2008, which provide:

> (1)(a) A person commits child abuse if such person causes an injury to a child's life or health, or permits a child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health, or engages in a continued pattern of conduct that results in malnourishment, lack of proper medical care, cruel punishment, mistreatment, or an accumulation of injuries that ultimately results in the death of a child or serious bodily injury to a child.
>
> . . .
>
> (7)(a)(III) When a person acts knowingly or recklessly and the child abuse results in serious bodily injury to the child, it is a class 3 felony.

Rector testified that she did not witness T.D.'s injury, explaining that she was in the shower and T.D. was in the master bedroom watching television when she heard a crash and jumped out of the shower to find T.D. sitting on the floor with his arm twisted. She testified that everything had been knocked off of the nightstand.

After paramedics arrived at Rector's Douglas County home, T.D. was airlifted to Children's Hospital in Denver for emergency surgery to relieve pressure on his brain from internal bleeding. A responding paramedic testified that Rector told him she was downstairs and heard a thud upstairs when the injury occurred.

Prior to trial, the trial court denied Rector's motion requesting an evidentiary hearing in accordance with *People v. Shreck*, 22 P.3d 68 (Colo.2001), to determine the admissibility of certain expert testimony. She sought to preclude the prosecution's medical experts from speculating that T.D.'s injuries resulted from child abuse.

Various experts testified at trial, including Dr. Sirotnak, a pediatrician who examined T.D. at the emergency room; Dr. Arlene Drack, a pediatric ophthalmologist who also examined T.D. at the emergency room; and Dr. Ken Winston, a neurosurgeon who conducted T.D.'s emergency operation. They testified to the severity of T.D.'s injuries and opined that the injuries were nonaccidental and unlikely to have been caused by a fall off a bed.

Dr. Sirotnak, who was qualified as an expert in child abuse, testified that T.D. suffered "a right-sided acute subdural hematoma, or brain bleeding," "a shift in the tissue of the brain," and "retinal hemorrhages, or hemorrhages within the backs of his eyes." Dr. Sirotnak testified that in his opinion, "within a reasonable [degree of] certainty," T.D.'s injuries were "the result of [child] abuse." He reached this conclusion after stating that he was unaware of any adequate explanation for the severity of T.D.'s traumatic injuries.

Dr. Sirotnak also testified that the presence of a severe traumatic injury and no history of trauma to explain that injury indicates that, from a medical perspective, there was child physical abuse or it is highly suspected there was child physical abuse.

The jury convicted Rector of felony child abuse and the court sentenced her to fifteen years in the Department of Corrections, plus five years of mandatory parole.

## II. Expert Testimony

Rector contends that the trial court abused its discretion in admitting expert testimony that T.D.'s injuries resulted from child abuse because it did not hold a *Shreck* hearing or otherwise determine the reliability and prejudicial effect of Dr. Sirotnak's testimony under CRE 702 and 403. She further contends the trial court erred in not instructing the jury regarding the different definitions of medical and legal child abuse. We agree.

■ We review the admission of expert testimony under CRE 702 for abuse of discretion, and we will not overturn the ruling unless it is manifestly erroneous. *People v. Martinez*, 74 P.3d 316, 322 (Colo.2003).

■ In exercising its broad discretion, the trial court must adequately inquire and determine that (1) the expert testimony is based upon reasonably reliable scientific principles; (2) the expert is qualified to opine on such matters; and (3) the expert testimony is helpful to the jury. *Id.; Shreck*, 22 P.3d at 77, 79. The trial court must also determine if the probative value of the expert testimony is substantially outweighed by the danger of unfair prejudice to the defendant under CRE 403. *Martinez*, 74 P.3d at 322; *Shreck*, 22 P.3d at 78.

Prior to trial, Rector filed a motion to restrict the People's experts from speculating as to the alleged cause of T.D.'s injuries. Specifically, she argued that the People's expert witnesses would speculate, among other things, that T.D.'s injuries were caused by "shaken baby syndrome." She also stated that "[s]uch diagnoses are necessarily inferential," "[n]o witness observed the infliction of the injury," and "[i]n general, some proponents of these syndromes suggest that whenever certain 'constellations' of injuries occur, that [sic] such are diagnostic of child abuse."

Rector's motion concedes that in *Martinez*, 74 P.3d 316, the supreme court held an expert could properly testify that subdural hematoma combined with bilateral retinal bleeding occurs only in cases where the injured person had suffered massive blunt force trauma, such as a fall from a multistory building.

During argument on the motion, Rector asserted that the experts would indicate that T.D. had suffered a nonaccidental head trauma caused by an intentional act of abuse. The prosecution agreed, but contended such an inference was proper.

At the hearing, Rector explained that she was not requesting an evidentiary hearing to

determine the reliability of shaken baby syndrome evidence.

The trial court determined that Rector's motion was a combination discovery request and partial request for a *Shreck* hearing. It ruled that because shaken baby syndrome is a diagnosis that medical experts can reach, based on *Martinez* no hearing was necessary to determine the reliability of such evidence. Thus, the trial court ruled only on the reliability of testimony about shaken baby syndrome.

However, the trial court did not make specific findings to determine the reliability of Dr. Sirotnak's anticipated testimony that T.D.'s injuries were caused by an intentional act of abuse, nor did it determine that the probative value of the testimony was not substantially outweighed by the danger of unfair prejudice.

## A. Adequate Inquiry

■ Rector asserts that the trial court did not inquire or make specific findings to determine whether the expert testimony was (a) reliable under CRE 702 *(Shreck* prong 1) or (b) unfairly prejudicial under CRE 403. Rector does not dispute that the expert testimony was helpful to the jury *(Shreck* prong 3). We agree that the trial court abused its discretion in admitting the expert testimony without making an adequate inquiry and specific findings.

■ Reliability is determined by the trial court based on the totality of circumstances, considering the reasonable reliability of the scientific principles underlying the testimony. *People v. Ramirez,* 155 P.3d 371, 378 (Colo. 2007). The totality of the circumstances consideration may include factors that the Supreme Court and other courts have considered pertinent to the same inquiry. *Shreck,* 22 P.3d at 70; *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 590, 593–94, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (reliability requires an expert opinion be based on reliable principles and methods as opposed to subjective belief or unsupported speculation); *Ramirez,* 155 P.3d at 378–79 (a party must show that the method used by the expert to reach a conclusion is scienti-

fically sound and that the opinion is based on facts which satisfy reliability requirements of CRE 702). An expert may also use a process of elimination as a reliable scientific method to reach a conclusion. *See Farmland Mut. Ins. Cos. v. Chief Indus., Inc.,* 170 P.3d 832, 836 (Colo.App.2007).

CRE 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. CRE 403 strongly favors the admission of relevant evidence. *People v. Salas,* 902 P.2d 398, 401 (Colo.App.1994).

■ Further, an expert may opine on an ultimate issue of fact. CRE 704; *Quintana v. City of Westminster,* 8 P.3d 527, 530 (Colo. App.2000) (opinion testimony is not objectionable merely because it embraces an ultimate issue of fact). However, an expert may not usurp the function of the court by expressing an opinion on the applicable law or legal standards. *Quintana,* 8 P.3d at 530.

■ Thus, a trial court may prohibit expert testimony regarding an ultimate legal determination that the fact finder is capable of determining. *Sniezek v. Colo. Dep't of Revenue,* 113 P.3d 1280, 1284 (Colo.App. 2005); *cf. Hines v. Denver & Rio Grande Western R.R.,* 829 P.2d 419, 422–23 (Colo. App.1991) (expert could testify that conduct of railroad employees was grossly negligent); *see also Masters v. People,* 58 P.3d 979, 992 (Colo.2002) (trial court properly limited testimony of forensic psychologist so he could not opine that defendant had committed the crime at issue); *People v. Wittrein,* 198 P.3d 1237, 1239–40 (Colo.App.2008) *(cert. granted* 221 P.3d 1076 (2009)) (experts could properly testify that child victim's statements were "consistent with" medical diagnoses, because opining as to consistency is not synonymous with expressing view of victim's truth or sincerity).

Here, Dr. Sirotnak testified that a subdural hematoma, such as the one T.D. suffered, is rarely, if ever, caused by a minor household fall. He stated that it was highly probable that physical abuse explained the severity

of T.D.'s injuries, because there was no other adequate explanation. He concluded that T.D.'s injuries were reasonably certain to have been the result of child abuse.

We conclude that the trial court abused its discretion in (1) not adequately inquiring and in not making specific findings whether Dr. Sirotnak's conclusion that T.D.'s injuries resulted from child abuse was based on reliable scientific principles, (2) admitting this evidence without making findings under CRE 403 and not instructing the jury on the different definitions of medical and legal child abuse. Here, the jurors heard Dr. Sirotnak's expert opinion regarding the ultimate legal issue, which usurped their role as fact finders. This error requires reversal because the primary issue for the jury was the nature of T.D.'s injuries, and the trial court did not instruct the jurors on the different definitions of medical and legal child abuse.

Accordingly, we reverse Rector's conviction and remand for a new trial.

■ On retrial, assuming the proffer of similar expert testimony, the trial court must make findings as to whether a medical expert's conclusions that a child's injuries resulted from child abuse are based on reliable scientific principles. *See, e.g., People v. Gordon,* 738 P.2d 404, 406 (Colo.App.1987) (a doctor qualified as an expert in the field of child abuse could properly testify that an infant's death was not accidental but resulted from violent shaking or nonaccidental whiplash).

In addition, the trial court must also explicitly rule concerning the admissibility of expert testimony concerning a diagnosis of child abuse under CRE 403, as required by *Shreck,* differentiating between medical and legal child abuse.

If the trial court determines that the scientific conclusions are reliable, direct testimony that T.D.'s injuries resulted from child abuse would not be proper, because such testimony would concern the ultimate legal determination of Rector's guilt at issue here.[1] *See*

*Sniezek,* 113 P.3d at 1284; *cf. Wittrein,* 198 P.3d at 1239–40. If the court determines the testimony is based on reliable scientific principles, the expert could testify that T.D.'s injuries were consistent with medical child abuse, but not that Rector was guilty of felony child abuse.

This issue is of particular importance here, because a medical diagnosis of child abuse differs from the legal elements of the offense of child abuse at issue here or the definition of child abuse in the Children's Code, section 19–1–103(1)(a), C.R.S.2008. Specifically, Dr. Sirotnak defined medical child abuse as involving severe traumatic injury and no history of trauma to explain that injury. In contrast, felony child abuse applies in broader circumstances, and also requires a finding that the person charged acted knowingly or recklessly. Thus, on remand, even if the trial court determines that expert testimony regarding injuries caused by medical child abuse is scientifically reliable, it must make findings on the issue of unfair prejudice under CRE 403 and, if it determines the evidence is admissible, it must instruct the jury on the different definitions of medical and legal child abuse.

### B. Evidentiary Hearing

Rector asserts that the trial court improperly denied her request for an evidentiary hearing. We agree in part.

The trial court must make specific findings in its CRE 702 and 403 analyses. *Shreck,* 22 P.3d at 83. In some instances *"Shreck* … does not require the trial court to conduct a hearing to inquire into the reliability of the evidence." *People v. McAfee,* 104 P.3d 226, 229 (Colo.App.2004) (record was sufficient for a determination that the scientific testing was reasonably reliable); *see also People v. Whitman,* 205 P.3d 371, 383 (Colo.App.2007).

Nonetheless, *Shreck* "requires the trial court to receive sufficient information to make specific findings about the reliability of the scientific principles involved and the ex-

---

1. Assuming that testimony that a child's injuries resulted from child abuse is considered to be scientifically reliable, we express no opinion on whether a medical expert could testify that a child's injuries resulted from child abuse when the charges against a defendant are for an offense other than felony child abuse.

pert's qualification to testify to such matters." *Whitman,* 205 P.3d at 383.

Rector specifically requested that the court hold an evidentiary hearing on the admissibility of testimony concerning child abuse. As previously discussed, the trial court did not grant the request nor did it otherwise receive sufficient information concerning the reliability of Dr. Sirotnak's testimony about child abuse. Here, further proceedings were necessary to determine whether Dr. Sirotnak could testify reliably that T.D.'s injuries were caused by child abuse because the record was not sufficient for a determination that this conclusion was scientifically reliable. Such proceedings could have been a pretrial *Shreck* hearing or the submission of expert affidavits. *See McAfee,* 104 P.3d at 229. Thus, we reverse and remand for a new trial.

Although we reverse on this issue, we address Rector's two other arguments because if they were meritorious, they would result in dismissal of the charges against Rector. *See People v. Williams,* 183 P.3d 577, 580 (Colo. App.2007) (addressing sufficiency of evidence argument after reversing conviction on other grounds); *People v. Gracey,* 940 P.2d 1050, 1052 (Colo.App.1996) (grant of motion for judgment of acquittal would require dismissal of charges).

## III. Insufficient Evidence

██ Rector contends that there was insufficient evidence to support her conviction for child abuse, specifically regarding the elements of mens rea and causation. We disagree.

We must view the evidence as a whole and "in the light most favorable to the prosecution" to determine whether the relevant direct and circumstantial evidence "is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty beyond a reasonable doubt as to each element of the charge." *People v. Martinez,* 165 P.3d 907, 913 (Colo.App.2007). The law makes no distinction between direct and circumstantial evidence in the sufficiency of the evidence analysis. *People v. Taylor,* 159 P.3d 730, 734 (Colo.App.2006).

Jury verdicts are presumed to be valid, and a conviction will be upheld if there is substantial evidence to support it. *Mata–Medina v. People,* 71 P.3d 973, 983 (Colo. 2003); *People v. Fuller,* 791 P.2d 702, 706 (Colo.1990).

The credibility of the witnesses is solely within the province of the jury; the trial court may not determine what specific weight is given to pieces of evidence; a modicum of relevant evidence will not rationally support a conviction beyond a reasonable doubt; and the verdict may not be based on guessing, speculation, or conjecture. *People v. Sprouse,* 983 P.2d 771, 777–78 (Colo.1999).

Where reasonable minds could differ, the evidence is sufficient to sustain a conviction. *Fuller,* 791 P.2d at 706.

Rector was charged with and convicted of felony child abuse resulting in serious bodily injury. § 18–6–401(1)(a), C.R.S.2008. The jury was instructed as to the elements of child abuse:

1. That the defendant,
2. in the State of Colorado, at or about the date and place charged,
3. knowingly or recklessly,
4. caused an injury to the child's life or health.

### A. Mens Rea

Rector asserts that there was insufficient evidence to prove that she had the requisite mens rea to commit child abuse, knowingly or recklessly. We disagree.

██ The culpable mental state applicable to child abuse relates to the nature of a defendant's conduct in relation to the child or to the circumstances under which the act occurred, and not to a particular result. *People v. Deskins,* 927 P.2d 368, 371 (Colo. 1996). Thus, knowing conduct requires an awareness of the abusive nature of the defendant's conduct in relation to the child, or awareness of the circumstances in which the defendant commits an act against the well-being of the child. *People v. Noble,* 635 P.2d 203, 209 (Colo.1981). Reckless conduct requires that a defendant consciously disregard a substantial and unjustifiable risk that, in

the light of the child's circumstances, the act or omission places the child in a situation which poses a threat of injury. *Deskins*, 927 P.2d at 371.

■ Circumstantial evidence that may be relevant to prove intent in a child abuse offense can include: the serious nature of the injuries; the defendant's admissions; the failure to seek medical care; indications of prior injuries that suggest repeated abuse; the brutality of the attack; the disparity in size and strength of the defendant and the victim; the defendant's lack of remorse and efforts to avoid detection; the concealment of the victim's body; and motive. *Martinez*, 74 P.3d at 325.

Rector concedes that the injuries were serious and that she was significantly larger and stronger than T.D.; however, she asserts that the other factors militated against a conclusion that she acted knowingly and recklessly. Conversely, the People argue that Rector showed a lack of remorse and repeatedly sought to avoid detection by claiming ignorance of the alleged offense, and that these factors support a conclusion that she acted knowingly and recklessly. We agree with the People.

The parties dispute the importance of the circumstantial evidence. However, we may not determine what specific weight is given to pieces of evidence. In addition to the evidence noted above on which the People rely, there was also evidence that Rector may have waited up to forty-five minutes before calling 911, that there were bloody paper towels found in her garbage, and that Rector explained that blood on her shirt was from her having cut T.D.'s nail too short the day before.

Because reasonable minds could differ as to the evidence relevant to prove intent, we conclude that there was sufficient evidence to support the jury's determination that Rector acted knowingly or recklessly.

### B. Causation

■ Rector next argues that there was no evidence that she caused the injuries to T.D. We disagree.

Rector states that there are "too many inferences to draw" about causation. However, as noted, the law makes no distinction between direct and circumstantial evidence. *Taylor*, 159 P.3d at 734. Here, the jury properly considered both direct and circumstantial evidence.

T.D. had a subdural hematoma, which experts concluded at trial was caused by a very hard blow to the head, such as a fall from a very high place or a hit, throw, or kick. Treating physicians calculated that T.D.'s injuries occurred within the prior twenty-four hours, when T.D. was in Rector's sole care. Dr. Sirotnak testified that Rector had intentionally inflicted child abuse on T.D. to cause his injuries. Although we concluded above that this testimony by Dr. Sirotnak was improperly admitted, the above circumstantial evidence implied that Rector caused the injuries.

Additionally, Rector's credibility was undercut because she provided two different explanations as to how T.D. could have received his injuries. Paramedic Travis Speakman testified that Rector told him she was downstairs when she heard a thud upstairs. At trial, she testified that T.D. had suffered a minor fall from a bed onto a carpeted floor when she was in the shower. Aside from the conflicting stories, the prosecution's experts testified that T.D.'s injuries were nonaccidental and not consistent with a fall from a bed.

Further, Speakman testified that Rector was unusually nervous and seemed more worried about herself than about the child.

Again, because reasonable minds could differ, and the jury's verdict is given deference, we conclude that the evidence in the record supports the jury's conclusion that Rector caused T.D.'s injuries.

The proof of Rector's guilt was largely circumstantial, and we conclude there was sufficient evidence for the jury to convict her of felony child abuse. *See Taylor*, 159 P.3d at 734.

### IV. Burden of Proof

■ Rector also contends that the trial court erred in denying her motion for a

judgment of acquittal by improperly shifting the burden of proof and removing the presumption of innocence, which violated her due process rights. Specifically, she asserts that once the medical experts testified that T.D.'s injuries resulted from a hard blow, hit, throw, or kick, or a fall from a high place, the People improperly shifted the burden to her to refute this testimony. We reject this contention.

 Due process guarantees that an accused can only be convicted "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he [or she] is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The burden of proof may not be shifted from the prosecution to the accused during a criminal trial, and the accused may not be called upon to affirmatively prove that he or she did not commit a crime. *People v. Clark*, 214 P.3d 531, 540 (Colo.App.2009).

Here, Rector was not required to prove that she did not commit child abuse. As we concluded above, the prosecution presented sufficient evidence to prove beyond a reasonable doubt each element of the charged offense.

The trial court instructed the jury multiple times that the burden of proof was on the prosecution to prove beyond a reasonable doubt the existence of all the elements necessary to constitute the crime charged. In addition, during closing arguments, the prosecutor reiterated that Rector "doesn't have to prove anything."

Thus, we conclude that Rector's due process rights were not violated.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

Judge ROMÁN and Judge LICHTENSTEIN concur.