The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Paul Bernard CORDOVA,
Defendant–Appellant.

No. 08CA1174.

Colorado Court of Appeals,
Div. I.

Oct. 13, 2011.

John W. Suthers, Attorney General, Katharine A. Hansen, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Joseph Paul Hough, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CARPARELLI.

Defendant, Paul Bernard Cordova, appeals the judgment of conviction entered upon a jury verdict finding him guilty of two counts of attempted first degree murder, two counts of first degree assault, and harassment. We affirm.

## I. Background

On June 9, 2007, two men suffered lacerations in a fight with defendant and his friend. Defendant fled, and an arrest warrant was issued. On June 20, 2007, police stopped defendant's SUV, arrested him, searched him and his vehicle, and found, among other things, eleven knives.

Before his trial, defendant moved to suppress the knives, arguing they were not relevant for a purpose other than to prove bad

character, and, in the alternative, that any probative value was outweighed by the danger of unfair prejudice because the evidence was inadmissible character evidence. The court denied the motion. A jury found defendant guilty of the above charges.

## II. The Knives

Defendant contends the trial court erred when it denied his motion to suppress the knives found on his person and in his SUV. We disagree.

We first describe the proceedings in the trial court, then address defendant's relevance and constitutional arguments in turn.

### A. Trial Court Proceedings

Defendant moved to exclude all evidence found on his person and in his SUV when he was arrested. He asserted that evidence of his possession of the knives was not relevant because there was no forensic testing connecting them to the charges. Defendant argued that the evidence had no probative value other than to show a character trait, and, thus, the evidence was unfairly prejudicial and inadmissible. Although defendant captioned his motion as one to suppress evidence, the motion did not contest the legality of the searches or seizures. Consequently, the court properly treated it as a motion in limine to exclude evidence.

At the motions hearing, the prosecution elicited testimony showing that, upon defendant's arrest, the officers found a folding knife in his pocket and ten other knives in his SUV. Defense counsel told the court, "There's no reason to suppress [the knives, marijuana, and a scale] for the purpose of— of [an improper] search clearly." His sole argument was that, absent forensic evidence connecting the knives to the crime, the knives and other items were not relevant for a purpose other than to prove bad character, had no probative value, and were highly prejudicial.

The court denied the motion. The court first noted that there was evidence that "the victim was stabbed by means of a knife" and that defendant was found with a knife on his person. The court then concluded that the probative value of the knives found on defendant and in his SUV outweighed their prejudicial effect. Although neither party addressed the constitutionality of the vehicle search, the trial court also found that it was valid either as a search incident to arrest or as an inventory search.

At trial, the prosecution introduced a surveillance video that shows the four men fighting, but does not show who inflicted the cuts on the victims. The prosecution also elicited detailed testimony about the traffic stop, the arrest, and the vehicle search, and introduced the knives into evidence. Defendant testified that he did not have a knife or other weapon on him the night of the stabbing. He also testified that the knives found in his SUV the night of the arrest were part of his long-standing collection.

During closing argument, the prosecutor asserted that the assailant likely used a small knife to inflict the cuts on the victims. The prosecutor's argument did not imply that defendant's possession of the knives evinced a character trait or that defendant had any tendency to assault people with knives.

Defendant argued that he had not stabbed the victims, and implied that his friend must have done so. The prosecution argued the small knives found in defendant's SUV during his arrest showed he must have used a small knife, similar to those found in his vehicle.

During rebuttal argument, the prosecution told the jury that although defendant testified that he could not have committed the crime because he did not have a weapon on him, "We know the Defendant had a folding knife on his person and ten other knives in his car when he was arrested some two weeks later."

### B. Relevance

Defendant contends that the knives were irrelevant and highly prejudicial, and that the trial court erred when it did not exclude them. We disagree.

#### 1. Standard of Review

■ We reject defendant's attempt to frame the admission of the knives as a viola-

tion of due process, and, thereby, to have the court's evidentiary ruling reviewed for constitutional harmless error. "[V]irtually any trial error capable of prejudicing a criminal defendant could in some sense be characterized as affecting [the defendant's] right to a fair trial . . . ." *Crider v. People,* 186 P.3d 39, 42 (Colo.2008). However, neither the Colorado Supreme Court nor the United States Supreme Court has ever designated broad categories of error as error of constitutional magnitude. *Id.*

C.A.R. 28(f) requires the party raising an issue on appeal to provide, under a separate heading, a concise statement of the applicable standard of appellate review with citation to authority, and a citation to the precise location in the record where the issue was raised and ruled on. Here, defendant contends that we should review de novo the admission of the knives as a denial of his due process right to a fair trial by an impartial jury, and, upon concluding that his due process rights were violated, review the error to determine whether the error was harmless beyond a reasonable doubt. He does not, however, provide a citation to the record where he raised a due process violation regarding admission of the evidence or where the court ruled based on due process. Nor does he cite to his motion to exclude the knives on grounds of relevance, inadmissible evidence of character, and prejudice. The motion did not assert a violation of due process.

Nor does defendant cite any Colorado case holding that a relevance objection preserves a due process claim, that the rejection of such an objection must be reviewed for constitutional error, or that the admission of irrelevant evidence necessarily violates due process.

Because defendant does not present an argument supporting a due process review, we could only address the contention based on a hypothetical construction of what defendant's due process argument might be. We decline to do so.

■ We review a trial court's evidentiary ruling for an abuse of discretion. A trial court abuses its discretion if its ruling is manifestly arbitrary, unreasonable, or unfair.

*People v. Stewart,* 55 P.3d 107, 122 (Colo. 2002) (citing *People v. Ibarra,* 849 P.2d 33, 38 (Colo.1993)). The trial court has considerable discretion to determine the relevancy, admissibility, probative value, and prejudicial impact of evidence. *Ibarra,* 849 P.2d at 38.

### 2. CRE 402

All relevant evidence is admissible unless otherwise excluded by constitution, statute, or rule. CRE 402; *People v. Rath,* 44 P.3d 1033, 1038 (Colo.2002). Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401; *see People v. Carlson,* 712 P.2d 1018, 1021–22 (Colo.1986).

■ In criminal cases, relevant evidence ultimately tends to make it more probable or less probable that a criminal act occurred (actus reus), that the defendant was the perpetrator (identity), and that the defendant acted with the necessary criminal intent (mens rea).

### 3. CRE 404

■ Evidence of a defendant's character or a trait of his character is not admissible to prove he acted in conformity with that trait on a particular occasion. CRE 404(a). However, evidence of other acts is admissible if it is logically relevant for some reason other than to prove that the defendant acted in conformity with a trait of character, so long as its probative value regarding the permissible purpose is not substantially outweighed by the danger of unfair prejudice and the other policy considerations of CRE 403. *Rath,* 44 P.3d at 1038.

■ To be admissible under CRE 404(b) for a purpose other than to prove a character trait, evidence of other crimes, wrongs, or acts must satisfy a four-part test: (1) the proffered evidence must relate to a material fact; (2) it must be logically relevant to the material fact; (3) the logical relevance must be independent of the prohibited inference that the defendant committed the crime charged because he acted in conformity with

his bad character trait; and (4) the evidence's probative value must not be substantially outweighed by the danger of unfair prejudice. *People v. Spoto,* 795 P.2d 1314, 1318 (Colo.1990); *see* Edward J. Imwinkelried, *Uncharged Misconduct Evidence* §§ 3.02–3.31, at 3–6 (2006) (evidence of other acts may be admissible to prove the defendant's identity as the perpetrator of the charged crime); *id.* §§ 4.1–4.24, at 4.7 (in some circumstances, evidence of other acts may show the defendant's capacity to commit the crime, and, thus, may be admitted to prove the actus reus); *id.* §§ 5.01–5.42, at 5–6 (evidence of other acts may be admissible to prove mens rea).

### 4. Knives as Evidence of Character

In *Kaufman v. People,* 202 P.3d 542, 545 (Colo.2009), the supreme court ruled that the trial court erred when it admitted evidence of a criminal defendant's knife collection. There, the defendant admitted that he had swung a pocket knife during a fight with the victim. Neither his possession nor his use of the pocket knife was in issue. There, the prosecutor's closing argument "painted [the defendant] as a dangerous man, fascinated with knives and martial arts." *Id.* at 548. Thus, the prosecutor used the evidence of the knife collection to prove a trait of the defendant's character and to imply that he acted in conformity with that trait. He did not argue that the knife collection was related and logically relevant to a material fact.

### 5. Analysis and Conclusion

■ We conclude the court did not abuse its discretion when it denied defendant's motion and admitted the knives into evidence.

The victims testified that they suffered lacerations from the fight, and the existence of the lacerations was corroborated by ample evidence. Defendant admitted he and his friend fought with the two victims, but denied he had cut them. Thus, the essential issue was whether defendant, or his friend, had inflicted the cuts during the fight.

It was undisputed that defendant owned many knives, and that, two weeks after the assault, he had one on his person and had access to several more in his SUV. The evidence of defendant's possession and ownership of the knives had a tendency to make it more probable that defendant had a knife the night of the stabbing, and, thus, that he was the one who had inflicted the cuts. *People v. Davis,* 218 P.3d 718, 729 (Colo.App.2008). This inference is independent of an intermediate inference regarding any trait of character. To infer that defendant had a knife at the time of the fight, one need not first conclude that defendant is a violent person, or that he has a propensity to engage in fights, assault people with or without knives, or otherwise disobey the law. As to this consideration, *Spoto* does not require that no such inferences be possible, but, rather, that the evidence be probative independent of an *intermediate* inference of a trait of character. *See People v. McBride,* 228 P.3d 216, 227 (Colo.App.2009) (citing *People v. Snyder,* 874 P.2d 1076, 1080 (Colo.1994)).

■ Here, although it might be possible to infer that the possession of many knives evinces a trait of character, it is unlikely that any such inference would be either so apparent or so concrete as to substantially outweigh the evidence's tendency to make it more probable that defendant had a knife at the time of the fight. And, unlike in *Kaufman,* where the prosecutor argued that the defendant was fascinated with knives and was a dangerous man, here, the prosecutor made no such argument.

Thus, we reject defendant's arguments that the only possible relevance of the knives was the forbidden inference that he had a violent, knife-wielding character, and acted in conformity with that character. We also reject his argument that the relevance of the knives was not independent of an intermediate inference regarding his character.

Accordingly, we conclude the trial court did not abuse its discretion when it ruled the knives were relevant and admissible under the rules of evidence.

### C. Constitutionality of the Search

Defendant contends that the search of his SUV violated the Fourth Amendment prohibition against unreasonable searches, and that the court erred when it ruled otherwise

and admitted the knives found in the vehicle. He argues that although he did not raise the issue at trial, the issue is preserved for constitutional harmless error review because the trial court ruled that the search was legal. We conclude that defendant waived the issue and that the trial court's subsequent ruling did not negate the waiver or preserve the issue for appeal.

### 1. Preserving an Issue for Appeal

■■■ To preserve an issue for appeal, a defendant must alert the trial court to the particular issue. *People v. Pahl,* 169 P.3d 169, 183 (Colo.App.2006). This is so because " 'the judge must largely rely upon the parties to research and raise issues, and giving the judge the wrong reason for a request is usually equivalent to giving the judge no reason at all.' " *Novak v. Craven,* 195 P.3d 1115, 1120 (Colo.App.2008) (quoting *Danco, Inc. v. Wal–Mart Stores, Inc.,* 178 F.3d 8, 15 (1st Cir.1999)). Thus, by stating the particular grounds for the objection or motion, the defendant not only gives the prosecution a full and fair opportunity to present relevant evidence and argument with regard to it, but also gives the court an opportunity to correct any error that could otherwise jeopardize the defendant's right to a fair trial. *Pahl,* 169 P.3d at 183.

Accordingly, " '[t]o preserve a claim for review on appeal, the party claiming error must have supplied the right ground for the request.' " *Novak,* 195 P.3d at 1120 (quoting *Danco, Inc.,* 178 F.3d at 15). Without these rules, a defendant could raise an issue for the first time on appeal and receive the most beneficial standard of review despite the fact that the prosecution was not on notice to present evidence and arguments regarding the unstated grounds, and, thereby, an adequate record for appellate review was not created. *See, e.g., United States v. Olano,* 507 U.S. 725, 732–33, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *People v. Petschow,* 119 P.3d 495, 501–02 (Colo.App.2004).

### 2. Waiver

■■■ "[C]ertain constitutional rights are given directly to the defendant and cannot be wielded by an attorney representative."

*People v. Bergerud,* 223 P.3d 686, 693–94 (Colo.2010). These include decisions about whether to plead guilty, whether to testify, whether to waive a jury trial, and whether to take an appeal, all of which relate to the conduct of the trial and appeal. *Id.; see also People v. Vickery,* 229 P.3d 278, 280 (Colo. 2010) (right to counsel during custodial interrogation); *People v. Montour,* 157 P.3d 489, 499 (Colo.2007) (right to trial by jury, right to confront accusers, and privilege against compulsory self-incrimination when pleading guilty); *People v. Curtis,* 681 P.2d 504, 514 (Colo.1984) (right not to testify at trial); *People v. Herron,* 251 P.3d 1190, 1199 (Colo.App. 2010) (right to counsel during trial and sentencing).

■■ In contrast, Colorado courts have consistently concluded that a defendant's failure to contest a search, investigatory stop, or arrest constitutes a waiver of the issue. *See People v. Gouker,* 665 P.2d 113, 117 (Colo. 1983) (failure to contest the validity of search warrant waived the issue); *People v. Barrus,* 232 P.3d 264, 270 (Colo.App.2009) (failure to contest validity of investigatory stop and attempted detention waived the issue); *People v. Russom,* 107 P.3d 986, 991 (Colo.App.2004) (failure to contest search warrant as pretextual waived the issue); *People v. White,* 64 P.3d 864, 871 (Colo.App.2002); *People v. Young,* 987 P.2d 889, 893 (Colo.App.1999) (failure to contest validity of arrest warrant waived the issue).

### 3. Analysis and Conclusions

■■■ At trial, defendant did not contend that the search violated the Constitution. Nor did he direct the court to the applicable constitutional considerations or explain how those principles should be applied to the evidence the prosecution presented. To the contrary, defense counsel told the court there was "no reason to suppress" the knives based on an improper search. Thus, although the court ruled that the vehicle search and the seizure of the knives were proper, it did so without the benefit of a complete record and argument addressing the specific issues defendant now raises.

Therefore, we reject defendant's contentions that the court's ruling preserved the issue and that we should review that ruling for constitutional harmless error. Instead, we conclude that defendant waived the legality of the search and that the court's ruling did not negate that waiver. Accordingly, we decline to address the legality of the search.

## III. Alleged Prosecutorial and Witness Misconduct

Defendant contends certain statements by the prosecution and witnesses constituted misconduct, such that the cumulative effect requires reversal. We disagree.

### A. Facts

Before trial, defendant filed a motion to suppress all references to "gang cultures pertaining to the Defendant, to Defendant's gang affiliations, and to any issue of gang retaliation." At a hearing on the motion, the prosecutor argued defendant's affiliation with the Mongols Motorcycle Club was relevant to his identity as the perpetrator. The court ruled the parties should avoid using the word "gang," but defendant's involvement with the Club was relevant for identity purposes.

On appeal, for the first time, defendant contends that the following testimony and argument constituted prosecutorial misconduct:

1. During direct examination, the prosecutor asked a witness what "patch holder" means, and the witness responded, "Um, they hold a patch in a motorcycle gang."

2. During opening and closing, the prosecutor called defendant an "outlaw" several times.

3. During opening and closing, the prosecutor made statements that outlaws "respect few and fear none," "stand up" or "stand tall," and do not "take anything from anybody."

Defendant contends the cumulative effect of the prosecutor's improper statements, the witness's gang reference, and the introduction of the knives, makes reversal "the only just and fair remedy." We disagree.

### B. Standard of Review

At trial, defendant did not object to the prosecutor's statements or the witness's response. Thus, on appeal, we review for plain error under Crim. P. 52(b). *See People v. Garcia,* 28 P.3d 340, 344 (Colo.2001); *see also Wend v. People,* 235 P.3d 1089, 1097 (Colo. 2010) (plain error review proper where defendant did not object to alleged misconduct at trial).

To constitute plain error, prosecutorial misconduct must have been so flagrant, glaring, or tremendously improper that the trial court should have intervened sua sponte. *Petschow,* 119 P.3d at 505; *People v. Salyer,* 80 P.3d 831, 839 (Colo.App.2003); *see United States v. Weaver,* 281 F.3d 228, 232 (D.C.Cir. 2002). Even then, to reverse, we must also conclude that the court's failure to address the misconduct so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *Salyer,* 80 P.3d at 839. "Prosecutorial misconduct in closing argument rarely constitutes plain error." *People v. Weinreich,* 98 P.3d 920, 924 (Colo.App.2004), *aff'd,* 119 P.3d 1073 (Colo.2005).

### C. Applicable Law

Where a defendant alleges improper statements by the prosecution, an appellate court engages in a two-step analysis, (1) reviewing, based on the totality of the circumstances, whether the prosecutor's statements were improper, and (2) determining whether any improper prosecutorial remarks warrant reversal. *Domingo–Gomez v. People,* 125 P.3d 1043, 1048 (Colo.2005); *accord Wend,* 235 P.3d at 1096. Each step is analytically independent, so that even if an appellate court finds a prosecutor's statement was improper, it may uphold the judgment if the errors are harmless. *Wend,* 235 P.3d at 1096.

As to whether the prosecutor's statements were improper, it is well-settled in Colorado that "a prosecutor, while free to strike hard blows, is not at liberty to strike foul ones." *Domingo–Gomez,* 125 P.3d at 1048 (quoting *Wilson v. People,* 743 P.2d 415, 418 (Colo.1987)).

■ If a prosecutor's statements are improper, a reviewing court must determine whether the prosecutor's statements affected the fundamental fairness of the trial. When doing so, we examine a variety of factors under the totality of the circumstances. *Wend,* 235 P.3d at 1096. These factors include "the exact language used, the nature of the misconduct, the degree of prejudice associated with the misconduct, the surrounding context, ... the strength of the other evidence of guilt," *id.* at 1098, "the severity and frequency of the misconduct ... and the likelihood that the misconduct constituted a material factor leading to the defendant's conviction," *People v. Strock,* 252 P.3d 1148, 1153 (Colo.App.2010).

■ A reviewing court may also consider defense counsel's failure to object, and "should examine alleged improper argument in the context of the prosecutor's closing argument as a whole. The fact that the defendant did not object to the remarks may indicate his belief that the live argument was not overly damaging." *People v. Villa,* 240 P.3d 343, 356 (Colo.App.2009).

■ Here, the witness's single use of the term "gang" was not improper because it was not specifically elicited by the prosecutor and the prosecutor steered the witness back to the terms "club" and "association." *See People v. Ned,* 923 P.2d 271, 275 (Colo.App.1996) ("Allegedly improper questions must be considered in the context of the testimony as a whole and in light of the evidence.").

■ In contrast, although the prosecutor's characterization of defendant as an "outlaw" during opening argument may have been permissible oratory, his statements implying that, as an outlaw, defendant respected few and feared none were improper attributions of traits of character. *Cf. People v. Holloway,* 973 P.2d 721, 724 (Colo.App.1998) (prosecutor's reference to defendant as a "gang-banging, drug[-]dealing, gun[-]toting menace to society" did not warrant reversal).

■ Nonetheless, the witness's single reference to "gang" and the prosecutor's statements, when viewed in the totality of the circumstances, did not so undermine the trial's fundamental fairness as to cast serious doubt on the reliability of the judgment of conviction. *See People v. Tillery,* 231 P.3d 36, 44 (Colo.App.2009) (*cert. granted* May 24, 2010). We reach this conclusion for the following reasons.

First, the evidence of defendant's guilt was strong. *See Wend,* 235 P.3d at 1098 (to determine whether reversal is required, courts consider, among other things, the "strength of the other evidence of guilt"). At trial, the jury viewed a video recording of defendant fighting with the victims. The first victim testified that he was sitting at a booth in a restaurant and that his meal had just arrived when defendant, without invitation, came to the booth. Defendant slid next to the victim on the bench, placed his arm around the victim's neck, and applied a choke hold. The victim said defendant put his face centimeters from the victim's, ground his forehead against the victim's, and began "disrespecting" him. The victim testified that he suggested that he and defendant go outside and defendant said, "[F]uck going outside." According to the victim, at that time he first felt excruciating pain in his side. The restaurant's hostess not only testified to these events, but also testified that she saw a blade in defendant's hand as he removed it from this victim's stomach. She said that although she did not see the entire knife, she saw a blade that she described as bigger than "a legal-size knife." At the same time, she also saw blood.

The second victim testified that when he tried to pull defendant off the first victim, defendant tried to stab him in the stomach and then hit him in the face. He testified that he felt the knife's tip slightly penetrate, and that, after defendant hit him in the face, the waitresses told him there was blood gushing from his face. He said he then noticed there was blood everywhere. The hostess also corroborated these events.

Photographs were admitted that showed the victims' injuries and indicated that the injuries resulted from stab wounds.

In light of the evidence introduced demonstrating defendant's guilt, we conclude that the prosecutor's misconduct was not flagrant

or tremendously improper. *See Tillery*, 231 P.3d at 44.

In addition, the absence of contemporaneous objections by defense counsel may indicate that counsel did not perceive the statements to be unduly prejudicial. *See Villa*, 240 P.3d at 356. Unlike in *People v. Knight*, 167 P.3d 147, 156 (Colo.App.2006), where defense counsel objected to the prosecution's characterization of "Montbello's Finest" as "running around with pistols, running around getting shot, doing time in jail," defense counsel here did not object to the statements now challenged on appeal.

Third, the record shows that the prosecutor's challenged comments were a small part of his argument, were not frequent, and were not unduly prejudicial in light of the entire record. *See Domingo–Gomez*, 125 P.3d at 1053 ("Comments that were 'few in number, momentary in length, and were a very small part of a rather prosaic summation' do not warrant reversal under the plain error standard." (quoting *People v. Mason*, 643 P.2d 745, 753 (Colo.1982))); *Strock*, 252 P.3d at 1153 (to determine reversal, we consider the "frequency of the misconduct"); *see also Wend*, 235 P.3d at 1098.

Finally, to the extent defendant alleges cumulative error, we reject that contention. Although we conclude that certain parts of the prosecutor's comments were improper, we rejected all of defendant's assertions of error. *See People v. Whittiker*, 181 P.3d 264, 275 (Colo.App.2006) (concluding the prosecution's alleged errors "did not, singly or cumulatively, deprive [defendant] of a fair trial," and thus defendant was not entitled to reversal).

The judgment is affirmed.

Judge TAUBMAN and Judge GABRIEL concur.