COLORADO COURT OF APPEALS                                  2017COA106

Court of Appeals No. 15CA0470
Adams County District Court No. 14CR1022
Honorable Thomas R. Ensor, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Samuel David Carian,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART
AND VACATED IN PART

Division I
Opinion by JUDGE TAUBMAN
Román and Lichtenstein, JJ., concur

Announced August 10, 2017

Cynthia H. Coffman, Attorney General, Jillian J. Price, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Rachel K. Mercer, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Samuel David Carian, appeals his judgment of conviction entered on a jury verdict finding him guilty of one count of forgery and one count of attempting to influence a public servant. We affirm in part and vacate in part.

## I.  Background

¶ 2     Carian was on probation for possession of a controlled substance, a misdemeanor.  He met his probation officer, Tuesday Black, in September 2013.  Black informed Carian that he had to complete regular urine drug tests.  Black gave him a list of approved facilities.  Carian completed some tests, but missed others and also returned tests with positive results.

¶ 3     In November 2013, Carian told Black that he wanted to do his urinalysis at a facility called Wiz Quiz.  Black told him that it was not an approved facility.  Carian met Black in November and December 2013, and he told her he was submitting samples at Wiz Quiz.  Black tried to get the test results from Wiz Quiz but was unable to confirm that Carian was a customer there.

¶ 4     In December 2013, Black drafted a revocation complaint for Carian's various probation violations.  It did not discuss Wiz Quiz or Black's inability to verify Carian's urinalysis test results.  When

Black served Carian with this complaint, he gave her four documents that he said were copies of his urinalysis results from Wiz Quiz. The documents said that he had had his urine tested at the Wiz Quiz location in Lakewood, Colorado, in November 2013 and that the results were negative for illegal drugs.

¶ 5    Black tried to contact Wiz Quiz to verify Carian's urinalysis test results but could not reach anyone at the website or the phone number listed on the documents he submitted to her. Eventually, she found the contact information for Julie Calvert, the manager of the Wiz Quiz in Lakewood. Calvert said Carian's documents did not match her company's forms. She also said the contact information was incorrect and she had no record of Carian being a Wiz Quiz customer.

¶ 6    Carian was then charged with forgery under section 18-5-102(1)(d), C.R.S. 2016, and attempting to influence a public servant under section 18-8-306, C.R.S. 2016, because he allegedly gave Black fraudulent test results.

## II.  Sufficiency of the Evidence

¶ 7    Carian contends that the evidence was insufficient to convict him of forgery under section 18-5-102(1)(d) because the urinalysis

2

test results at issue that he handed to his probation officer were not a "public record" or "an instrument filed or required by law to be filed or legally fileable in or with a public office or public servant." While we conclude that the urinalysis test results from Wiz Quiz were "instrument[s]" within the reach of the statute, we also conclude that they were not filed, required by law to be filed, or legally fileable as provided in section 18-5-102(1)(d), and therefore the evidence does not support his forgery conviction.

## A. Standard of Review

¶ 8    We review the record de novo to determine whether the evidence was sufficient to support a conviction. *People v. Roggow*, 2013 CO 70, ¶ 13, 318 P.3d 446, 450. To the extent that the resolution of this issue requires interpretation of the forgery statute, we conduct that review de novo. *Chavez v. People*, 2015 CO 62, ¶ 7, 359 P.3d 1040, 1042.

¶ 9    When a defendant challenges the sufficiency of the evidence, we must determine "whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of the accused's guilt

3

beyond a reasonable doubt." *People v. Sprouse*, 983 P.2d 771, 777 (Colo. 1999).

## B. Applicable Law

¶ 10    "The Due Process Clauses of the Colorado and United States Constitutions require the prosecution to prove the existence of every element of a charged offense beyond a reasonable doubt." *People v. Espinoza*, 195 P.3d 1122, 1127-28 (Colo. App. 2008); *see* U.S. Const. amends. V, VI, XIV; Colo. Const. art. II, §§ 16, 23, 25; *In re Winship*, 397 U.S. 358, 363-64 (1970). "[A] modicum of relevant evidence will not rationally support a conviction beyond a reasonable doubt," and a verdict cannot be based on "guessing, speculation, or conjecture." *Sprouse*, 983 P.2d at 778. If reasonable jurors must necessarily have a reasonable doubt about a defendant's guilt, the trial court must direct an acquittal. *People v. Bennett*, 183 Colo. 125, 132-33, 515 P.2d 466, 470 (1973).

¶ 11    A person commits forgery if

> with intent to defraud, such person falsely makes, completes, alters or utters a written instrument which is or purports to be, or which is calculated to become or to represent if completed:
>
> . . .

4

> [a] public record or an instrument filed or
> required by law to be filed or legally fileable in
> or with a public office or public servant.

§ 18-5-102(1)(d). "As a matter of law, the crime of forgery is complete when the act and guilty knowledge coincide with the intent to defraud." *People v. Cunefare*, 102 P.3d 302, 307 n.4 (Colo. 2004). The intent to defraud may be inferred "where the defendant passed an instrument he knows to be false." *Id.* As relevant here, a "[w]ritten instrument" is defined as "any paper, document, or other instrument containing written or printed matter or the equivalent thereof, used for purposes of reciting, embodying, conveying, or recording information[.]" § 18-5-101(9), C.R.S. 2016.[1] "Utter" means "to transfer, pass, or deliver, or attempt or cause to be transferred, passed, or delivered, to another person any instrument." § 18-5-101(8).

### C. Analysis

¶ 12 The elements of the crime of forgery under section 18-5-102(1)(d) are: (1) that a person; (2) with intent to defraud; (3) falsely

---

[1] We note that while section 18-5-102(1)(d), C.R.S. 2016, refers only to an "instrument," section 18-5-102(1) refers to "a written instrument" and section 18-5-101(9), C.R.S. 2016, defines only a "[w]ritten instrument."

5

made, completed, or uttered a written instrument; (4) which was, or which purported to be, or which was calculated to become, or to represent if completed; (5) a public record or an instrument filed, or required by law to be filed, or legally fileable in or with a public office or public servant. In this appeal, we must first consider whether the urinalysis reports Carian gave to Black are "instrument[s]," or "public record[s]" within the ambit of section 18-5-102(1)(d) and, if so, whether they were "calculated to become or to represent if completed . . . [a] public record or an instrument filed or required by law to be filed or legally fileable in or with a public office or public servant." § 18-5-102(1)(d).

¶ 13    When we interpret a statute, our primary goal is to ascertain and give effect to the intent of the General Assembly. *Dubois v. People*, 211 P.3d 41, 43 (Colo. 2009). The statute must be read as a whole, giving words and phrases their plain and ordinary meanings, and the statute must be interpreted to give consistent, harmonious, and sensible effect to all of its parts. *People v. Summers*, 208 P.3d 251, 254 (Colo. 2009).

¶ 14    If the plain language of the statute is clear and unambiguous, we apply the statute as written, unless it leads to an absurd result.

*Kauntz v. HCA-Healthone, LLC*, 174 P.3d 813, 816 (Colo. App. 2007); *see also People v. Kovacs*, 2012 COA 111, ¶ 11, 284 P.3d 186, 188. Additionally, no interpretation should render any part of the statute superfluous. *See Kisselman v. Am. Family Mut. Ins. Co.*, 292 P.3d 964, 969 (Colo. App. 2011). "A strained or forced construction of a statutory term is to be avoided, and we must look to the context of a statutory term." *Fogg v. Macaluso*, 892 P.2d 271, 274 (Colo. 1995) (citation omitted).

¶ 15    We presume that the General Assembly intends a just and reasonable result when it enacts a statute, and a statutory construction that defeats the legislative intent will not be followed. *Kauntz*, 174 P.3d at 816. If, however, the statutory language lends itself to alternative constructions and its intended scope is unclear, a court may apply other rules of statutory construction to determine which alternative construction is in accordance with the objective sought to be achieved by the legislation. *Id.*

¶ 16    A word may be defined by an accompanying word and, ordinarily, the coupling of words denotes an intention that they should be understood in the same general sense. *See* 2A Norman Singer & Shambie Singer, *Sutherland Statutory Construction*

§ 47:16, Westlaw (7th ed. database updated Nov. 2016). However, the use of the disjunctive "or," according to the supreme court, can also connote alternate ways of committing the same crime. *See People v. Barry*, 2015 COA 4, ¶ 96, 349 P.3d 1139, 1157 ("[W]hen the legislature joins a number of acts disjunctively in a single provision of the criminal code, courts have found that 'the legislature intended to describe alternate ways of committing a single crime rather than to create separate offenses.'" (quoting *People v. Abiodun*, 111 P.3d 462, 465 (Colo. 2005))).

### 1. "Instrument"

¶ 17    Under the plain language of the statute, a person commits forgery if, with the intent to defraud, he or she makes, completes, or utters "a written instrument which is *or* purports to be, *or* which is calculated to become *or* to represent if completed . . . [a] public record *or* an instrument filed *or* required by law to be filed *or* legally fileable in *or* with a public office *or* public servant." § 18-5-102(1)(d) (emphasis added). "[W]hen the word 'or' is used in a statute, it is presumed to be used in the disjunctive sense, unless legislative intent is clearly to the contrary." *Armintrout v. People*, 864 P.2d 576, 581 (Colo. 1993). Thus, while Carian argues that the evidence

is insufficient to charge him with first degree forgery because his urinalysis reports were not "public record[s]," the statute states that such documents can also be "instrument[s]."

¶ 18    As defined in the statute, a "[w]ritten instrument" means "any paper, document, or other instrument containing written or printed matter or the equivalent thereof, used for purposes of reciting, employing, conveying, or recording information." § 18-5-101(9). Accordingly, we conclude that Carian's urinalysis reports qualify as "instrument[s]," since those documents recorded and conveyed information to his probation officer regarding the apparent results of his mandatory drug tests required as a condition of his probation.

2. "Filed or [R]equired by [L]aw to be [F]iled or [L]egally [F]ileable"

a. Interpretation

¶ 19    While defendants have been charged under the former iterations of subsection (1)(d), *see People v. Vesely*, 41 Colo. App. 325, 587 P.2d 802 (1978), no Colorado appellate case has interpreted the meaning of the phrase "filed or required by law to be

filed or legally fileable in or with a public office or public servant."[2] § 18-5-102(1)(d); *see Cunefare*, 102 P.3d 302.

¶ 20 Black's Law Dictionary defines "to file" in the context of legal proceedings. "To file" means "[t]o deliver a legal document to the court clerk or record custodian for placement into the official record . . .; [t]o commence a lawsuit." Black's Law Dictionary 745 (10th ed. 2014). The term can also mean "[t]o record or deposit something in an organized retention system or container for preservation and future reference." *Id.*

¶ 21 The General Assembly enacted section 18-5-102 in 1993 as part of House Bill 93-1302, which repealed and re-enacted a large section of the criminal code. *See* Hearings on H.B. 93-1302 before the H. Judiciary Comm., 59th Gen. Assemb., 1st Sess. (Feb. 16, 1993). While the legislative hearings noted that the new forgery statute combined first and second degree forgery into one broad

---

[2] We note that another division of this court relied on the dictionary to interpret "file" in another statute to mean "to deliver (as a legal paper or instrument) after complying with any condition precedent (as the payment of a fee) to the proper officer for keeping on file among the records of his office." *Colo. Div. of Ins. v. Auto-Owner's Ins. Co.*, 219 P.3d 371, 378 (Colo. App. 2009) (quoting Webster's Third New International Dictionary 849 (2002)) (interpreting section 10-3-109, C.R.S. 2016).

statute, they did not explain why the specific statutory language was used. *See id.*

¶ 22    Since the enactment of section 18-5-102, however, appellate courts have interpreted subsection (1)(c). *See Cunefare,* 102 P.3d 302; *People v. Taylor,* 159 P.3d 730, 734 (Colo. App. 2006).

¶ 23    *Cunefare* and *Taylor* were decided long after section 18-5-102 was enacted. Their holdings remain valid, and their analyses — and the earlier analysis of subsection (1)(d) in *Vesely,* 41 Colo. App. 325, 587 P.2d 802 — have not prompted the legislature to alter or clarify the language of the statute. As a result, we conclude that their interpretations reflect the intent of the General Assembly when it enacted the current forgery statute. *See Bd. of Cty. Comm'rs v. Colo. Pub. Utils. Comm'n,* 157 P.3d 1083, 1089 (Colo. 2007) ("[L]egislative inaction to change this court's interpretation of a statute is presumed to be ratification of that interpretation.").

¶ 24    We must avoid rendering any part of the statute superfluous. *See Kisselman,* 292 P.3d at 969. The statute defines "to utter" as "to transfer, pass, or deliver" an instrument to another person. § 18-5-101(8). Therefore, while the verb often includes the action of delivery, in the context of subsection (1)(d), "to file" an instrument

11

must mean more than simply delivering it to a public office or a public servant; otherwise, the General Assembly would not have separately defined "to utter" as the act of passing or delivery independent of "to file." To include two definitions of transfer, passing or delivery, in the statute would be redundant.

### i. Subsection (1)(d)

¶ 25 Further, to avoid rendering any part of the forgery statute superfluous, the conduct prohibited in subsection (1)(d) must differ from that identified in subsection (1)(c) of the statute, which prohibits forgery of an instrument that may "otherwise affect a legal right, interest, obligation, or status." § 18-5-102(1)(c).

¶ 26 We conclude that under subsection (1)(d), "filed or required by law to be filed or legally fileable in or with a public office or public servant" refers to those instruments actually delivered to a public office or public servant pursuant to a legal mandate, such as documents that have a specific legal requirement of delivery to a public officer or with a public office for a specific purpose, like income taxes or license applications. *See, e.g.*, *People v. Eckley*, 775 P.2d 566, 568 (Colo. 1989) (defendant submitted fraudulent license applications for recording with state and local liquor

12

licensing authorities); *Vesely*, 41 Colo. App. 325, 330, 587 P.2d 802, 805 (defendant filed tax returns in other people's names so he could receive additional tax refunds). "Legally fileable" documents may also include real property conveyancing documents and other documents relating to interests in real property which may be "legally fileable" even though they are not filed "pursuant to a legal mandate." This interpretation gives effect to subsection (1)(d) without rendering the broad language of subsection (1)(c) superfluous. *See Kisselman*, 292 P.3d at 969. Our interpretation of subsections (1)(c) and (d) gives effect to each subsection of the statute.

## ii.  Subsection (1)(c)

¶ 27     Our conclusion is fortified by appellate decisions interpreting subsection (1)(c). In *Cunefare*, the supreme court noted that the General Assembly did not define the language in subsection (1)(c) but concluded that it "arguably intended to allow more flexibility in applying the statute to forgery crimes." 102 P.3d at 308. In addition, "[b]ecause the reach of the statute is broad and includes instruments that affect or may affect a legal right, interest, obligation, or status, we construe the statute broadly." *Id.* at 309.

"The language of the statute does not apply only to instruments affecting financial, property, or legal matters but rather applies to any legal right, interest, obligation or status." *Id.* at 309-10. The *Cunefare* court concluded that the defendant's forged letter to the prosecutor fell under subsection (1)(c). The letter had a legal effect because it was "clearly an effort to influence the prosecutor and thereby impact or affect the pending case." *Id.* at 310.

¶ 28 Similarly, in *Taylor*, 159 P.3d at 734, a division of this court concluded that subsection (1)(c) was broad enough to include a defendant's forged forms given to her probation officer that purported to show her completion of required community service. The division concluded that such forms could impact the defendant's liberty interest, "a legal right which clearly was subject to termination if she failed to perform the . . . public service that [was] documented in the forms submitted to the agency." *Id.* at 734.

¶ 29 In contrast, in *Vesely*, the defendant was charged with forgery under what is now subsection (1)(d) for filing forged income tax returns. A division of this court found that the evidence was sufficient to support the defendant's forgery conviction because

14

income tax returns are "'instruments filed or required by law to be filed . . . with a public office,' as required by . . . [the] statute." *Vesely*, 41 Colo. App. at 330, 587 P.2d at 805 (citation omitted).

      b.  Application to Carian's Forged Urinalysis Reports

¶ 30    The People argue that we should affirm Carian's conviction of felony forgery because the act of giving his urinalysis results to his probation officer was sufficient evidence that he "filed" the instruments as required under subsection (1)(d) or, alternatively, that the urinalysis results were "legally fileable." We disagree and conclude that the evidence was insufficient to support Carian's conviction under section 18-5-102(1)(d) because it does not show that Carian engaged in any conduct proscribed by subsection (1)(d).

¶ 31    Looking at the evidence in the light most favorable to the prosecution, we conclude that the evidence is insufficient to demonstrate that the urinalysis reports were "required by law to be filed or legally fileable in or with a public office or public servant," because "filing" a urinalysis report is not a legally mandated procedure of delivery to include in a probationer's record. In other words, evidence does not show that Carian either "filed" the

15

urinalysis reports or that the urinalysis reports were "legally fileable."

¶ 32    Carian's act of handing the urinalysis reports to Black does not mean that he "filed" an instrument as contemplated by subsection (1)(d). Black, while a public servant, was not mandated to receive and maintain urinalysis reports as required by subsection (1)(d). She is required by law to keep records of her work with Carian concerning the terms of his probation, *see* § 16-11-209, C.R.S. 2016 (duties of a probation officer), but her duties do not include maintenance of formal drug urinalysis reports.

¶ 33    In fact, Black told Carian that she could not accept his Wiz Quiz results directly from him because "there could be tampering with the results." Thus, giving the urinalysis reports to Black was not even an accepted procedure of keeping records in the probation department. Moreover, the evidence does not demonstrate that Carian handed his test results to the probation officer for the purpose of incorporation into a formal or public record.

¶ 34    Similarly, the urinalysis reports were not "legally fileable" under subsection (1)(d). None of the actions described above lend the urinalysis reports the status of "legally fileable" under the

statute because, again, there is no legally mandated requirement of filing any such reports for a specific purpose.

¶ 35    Rather, Carian's conduct was more akin to that prohibited under section 18-5-102(1)(c), passing of a forged instrument "which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status." *See Cunefare*, 102 P.3d 302; *Taylor*, 159 P.3d 730.  However, Carian was not charged under subsection (1)(c).

¶ 36    Consequently, we conclude that the evidence presented at trial was insufficient to support Carian's conviction of forgery under section 18-5-102(1)(d).  We therefore vacate Carian's conviction of felony forgery.  *See People v. Miralda*, 981 P.2d 676, 680 (Colo. App. 1999).

### III.  Lesser Nonincluded Offense Instruction

¶ 37    Carian contends that the trial court erred when it denied his request for an instruction on the lesser nonincluded offense of second degree forgery.  Because we have vacated Carian's forgery conviction based on insufficient evidence, we need not address this issue.

### IV.  Res Gestae Evidence

17

¶ 38    Carian contends that the trial court erred when it admitted evidence under the doctrine of res gestae showing that he had been previously convicted of a drug offense.  We conclude that regardless of whether the admission of such evidence was error, it did not substantially influence the verdict or affect the fairness of the proceedings regarding his conviction for attempting to influence a public servant, and thus any error in its admission was harmless.

¶ 39    In a pretrial hearing, the People notified the court it intended to introduce testimony showing Carian was on probation for possession of a controlled substance when he committed the offenses in this case.  Defense counsel did not object to evidence showing Carian was on probation for a misdemeanor, but objected to evidence showing that his prior offense was possession of a controlled substance.  The trial court admitted this evidence as res gestae because without it the jurors would be left to "guess" the identity of his prior offense.  The court also stated that it was "just a matter of being truthful to the jury."

¶ 40    At trial, Black testified that Carian was on probation for possession of a controlled substance.  She explained that one of the conditions of his probation was submitting urine tests to ensure he

was not using illegal drugs.  Before Black testified, the trial court

instructed the jury as follows:

> Ladies and gentlemen of the jury, certain
> evidence is about to be admitted for a
> particular purpose only and for no other.
> Evidence of the fact that the defendant was on
> probation for a misdemeanor conviction is
> such evidence.  It is only being offered to
> provide context to the current charges and not
> as proof of any of the elements of the crimes
> charged.  The defendant is to be tried for the
> crimes charged in this case and no other.

The court also gave a written instruction to the jury that "[t]he court

admitted certain evidence for a limited purpose.  You are again

instructed that you cannot consider that evidence except for the

limited purpose I told you when it was admitted."

## A.  Standard of Review

¶ 41    While Carian contends that we must review this issue under a

constitutional harmless error standard, the People assert that this

claim is subject only to nonconstitutional harmless error review.

We agree with the People that evidentiary rulings are subject to the

nonconstitutional harmless error standard.  *Wend v. People,* 235

P.3d 1089, 1097 (Colo. 2010); *see also People v. Cordova,* 293 P.3d

114, 118 (Colo. App. 2011) (rejecting defendant's attempt to frame

an evidentiary issue as one of constitutional magnitude). An error is harmless if it does not substantially influence the verdict or affect the fairness of the proceedings. *People v. Munsey*, 232 P.3d 113, 123 (Colo. App. 2009).

## B. Applicable Law

¶ 42 Res gestae is evidence of a "matter incidental to the main fact and explanatory of it, including acts and words which are so closely connected therewith as to constitute a part of the transaction, and without knowledge of which the main fact might not be properly understood." *People v. Rollins*, 892 P.2d 866, 872-73 (Colo. 1995) (quoting *Woertman v. People*, 804 P.2d 188, 190 n.3 (Colo. 1991)). To be admissible, res gestae evidence must be relevant under CRE 401 and its probative value cannot be substantially outweighed by the danger of unfair prejudice under CRE 403. *See id.* at 873.

## C. Analysis

¶ 43 We conclude that regardless of whether evidence of Carian's predicate drug offense was res gestae, its introduction did not substantially influence the verdict or affect the fairness of the proceedings.

¶ 44    First, the evidence of Carian's prior drug offense that led to his probation was not unduly prejudicial.  The nature of Carian's offenses at issue already informed the jury that Carian had issues related to drugs.  In addition to charging Carian with the submission of a fraudulent drug test to his probation officer, the People properly introduced evidence without objection by Carian that he had failed some drug tests in the course of his probation.  Hearing that Carian's predicate offense related to drugs likely had minimal impact on the jury.  *See People v. Thorpe*, 641 P.2d 935, 943 (Colo. 1982) (The evidence was not "so shocking that [its] probative value was outweighed by the likelihood that [it] would inflame the passions of the jury or cause them 'to abandon their mental processes and give expression to their emotions.'") (citation omitted).

¶ 45    More importantly, the court instructed the jury before it heard the evidence of his previous drug-related offense that such evidence was admissible for only a limited purpose, which was "to provide context to the current charges and not as proof of any of the elements of the crimes charged."  Without contrary evidence, "we presume that a jury follows a trial court's instructions."  *Qwest*

21

*Servs. Corp. v. Blood*, 252 P.3d 1071, 1088 (Colo. 2011), *as modified on denial of reh'g* (June 20, 2011). As a result, we conclude that the court's instruction mitigated any potential prejudice that may have flowed from the admission of the challenged evidence.

¶ 46    Accordingly, we conclude that any error in the admission of Carian's drug offense was harmless.

## V.  Prosecutorial Misconduct

¶ 47    Carian contends that the prosecutor committed misconduct by asking the jury to hold him accountable for wasting public resources and "squandering" the opportunity to rehabilitate himself on probation during both his opening statement and his rebuttal closing. Carian objected only to the statements the prosecutor made in his rebuttal closing arguments. While we conclude that the prosecutor's statements were improper, we further conclude that the admission of such statements does not warrant reversal under either plain or harmless error review.

¶ 48    During voir dire, the prosecutor discussed the purposes of probation. He told the jury one purpose is punishment, but another is rehabilitation and treatment of problems like alcohol addiction. In his opening statement, the prosecutor told the jurors

Carian was on probation and that "[t]he evidence is going to show you that [Carian] squandered his opportunity on probation, and not only that, wasted valuable resources that the probation department had because they had to investigate this. At the end of this case, I'm going to ask you to hold him accountable for his actions." Defense counsel did not object to this statement.

¶ 49    In his rebuttal closing, the prosecutor reminded the jury that the court had given Carian an opportunity to rehabilitate himself on probation and again suggested he had wasted public resources because he refused to take advantage of this opportunity. Specifically, he argued that this case "matters because probation has different purposes. Remember when we talked about that in jury selection? It's not just for punishment. It's for people who are trying to get treatment, trying to get help, trying to get — use resources that probation can provide in order — so that they can make better decisions in their lives." Defense counsel objected to this statement as an improper argument, and the court admonished the prosecutor, saying, "Stay away from talking about sanctions." The prosecutor then told the jury, "Probation does not need to be spending their time investigating stuff like this." Defense

counsel objected again, and the court again told the prosecutor to "stay away from the issue of sanctions."

## A. Standard of Review

¶ 50    Absent a constitutional violation, we review the trial court's ruling on prosecutorial misconduct for an abuse of discretion. *People v. Welsh*, 176 P.3d 781, 788 (Colo. App. 2007).  However, if the defendant's contention of misconduct is not preserved by a contemporaneous objection, we review a prosecutor's comments for plain error.  *Wilson v. People*, 743 P.2d 415, 419 (Colo. 1987).

¶ 51    Because Carian did not object to the prosecutor's allegedly improper statements in his initial opening statement, we review the prosecutor's statements during opening statement for plain error.

¶ 52    To constitute plain error, any prosecutorial misconduct must be "flagrant or glaringly or tremendously improper" and so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction.  *People v. Cevallos-Acosta*, 140 P.3d 116, 122 (Colo. App. 2005) (citation omitted) (finding no plain error in the prosecution's improper definition of reasonable doubt during voir dire and closing arguments where jury instructions correctly defined the concept).

24

Prosecutorial misconduct is rarely, if ever, so egregious as to warrant reversal. *People v. Wallace*, 97 P.3d 262, 269 (Colo. App. 2004).

¶ 53   During rebuttal closing, Carian objected to both of the prosecutor's allegedly improper statements. As a result, we review the trial court's ruling on such statements for an abuse of discretion. *Welsh*, 176 P.3d at 788. "In determining whether a trial court abused its discretion in denying a motion for a new trial on prosecutorial misconduct grounds, appellate courts are mindful that 'the trial court is best positioned to evaluate whether any statements made by counsel affected the jury's verdict.'" *People v. Rhea*, 2014 COA 60, ¶ 66, 349 P.3d 280, 295 (quoting *Domingo-Gomez v. People*, 125 P.3d 1043, 1049–50 (Colo. 2005)).

## B.  Applicable Law

¶ 54   When evaluating a claim of prosecutorial misconduct, we engage in a two-step analysis. *Domingo-Gomez*, 125 P.3d at 1048-49. First, we determine whether the prosecutor's conduct was improper based on the totality of circumstances. *Id.* We then determine whether the statements warrant reversal under the proper standard of review. *Id.* "Each step is analytically

independent, so that even if an appellate court finds a prosecutor's statement was improper, it may uphold the judgment if the errors are harmless." *Cordova*, 293 P.3d at 121.

¶ 55 Further, if a prosecutor's statements are improper, a reviewing court must determine whether they affected the fundamental fairness of the trial. *Id.* at 122. The reviewing court examines a variety of factors under the totality of the circumstances. *Id.*; *see also Wend*, 235 P.3d at 1097. "These factors include 'the exact language used, the nature of the misconduct, the degree of prejudice associated with the misconduct, the surrounding context, . . . the strength of the other evidence of guilt,' . . . 'the severity and frequency of the misconduct[,] . . . and the likelihood that the misconduct constituted a material factor leading to the defendant's conviction.'" *Cordova*, 293 P.3d at 122 (citations omitted).

¶ 56 A prosecutor must confine the closing argument to the evidence admitted at trial and any reasonable inferences that may be drawn from that evidence. *Domingo-Gomez*, 125 P.3d at 1048-49. He or she cannot use the closing argument to mislead the jury and must refrain from making arguments "which would divert the jury from its duty to decide the case on the evidence." *Id.* at 1049

(citation omitted). The same restrictions apply to a prosecutor's opening statement because the rules governing opening statements are more restrictive than those applying to closing arguments. *See People v. Hernandez*, 829 P.2d 394, 396 (Colo. App. 1991).

## C. Analysis

### 1. Opening Statement

¶ 57    The prosecutor's comment on Carian's squandering of resources was unrelated to the charges against Carian because, as Carian argues, it diverted the jury's attention from the charges of forgery and attempting to influence a public servant, especially since the prosecutor asked the jury to hold him accountable for squandering resources. Further, the comments were a misstatement. As Carian's probation officer, Black, testified, her role was to "supervise the client[,] . . . order the client to do urine tests, attend classes, attend probation appointments, [and] monitor their compliance through the courts." Contrary to the prosecutor's assertions, one duty of the probation department is to investigate clients' alleged noncompliance with the terms of their probation, including, as charged here, any alleged instances of deception. As a result, the prosecutor's comments had the potential to mislead the

jury from its duty to decide the charges against Carian based on the evidence before it.  *See Domingo-Gomez,* 125 P.3d 1048-49; *see also Hernandez,* 829 P.2d at 396.

¶ 58    However, even though allowing these remarks was error, it was not plain.  First, the prosecutor's comments about "squandering his opportunity" and "wasting resources" were not flagrantly or glaringly improper, since they did not accuse Carian of committing any additional crime.  *See Cevallos-Acosta,* 140 P.3d at 122.  The comments were also fleeting relative to the argument as a whole and in light of all the evidence the jury heard after opening statements.  *See People v. McMinn,* 2013 COA 94, ¶ 60, ___ P.3d ___, ___.

¶ 59    Finally, the jury was expressly instructed that "[a]n opening statement is not evidence.  Its purpose is to give you a framework to help you understand the evidence as it is presented."  Nothing in the record suggests that the jury did not follow the court's instructions.  *See People v. McKeel,* 246 P.3d 638, 641 (Colo. 2010) (juries are presumed to follow the instructions they receive from trial courts).

¶ 60     Accordingly, we conclude that the prosecutor's comments during opening statement did not constitute plain error.

## 2.  Rebuttal Closing Argument

¶ 61     We next conclude that it was also improper for the prosecutor to say that the probation department "does not need to be spending their time investigating stuff like this."  As stated above, the prosecutor's comments on the purpose of probation and Carian's wasting of public resources were misstatements, since it is the duty of the probation department to monitor clients and ensure their compliance with the terms of their probation.

¶ 62     However, unlike during opening statement, Carian objected to these statements.  As a result, Carian's contention of misconduct during closing argument is preserved, and we review the court's admission for harmless error.  *See Welsh*, 176 P.3d at 788.

¶ 63     Despite Carian's arguments to the contrary, we conclude that the court effectively sustained his objection when it admonished the prosecutor by saying, "Stay away from talking about sanctions." Even though the court did not use the word "sustained," it twice told the prosecutor to "stay away" from the line of argument that he was pursuing.  The prosecutor in turn ended his argument after the

court's second admonition. Thus, in context, we interpret the words "stay away" as effectively sustaining Carian's objection. *See, e.g.*, *Peavy v. State*, 766 So. 2d 1120, 1125 (Fla. Dist. Ct. App. 2000) (finding that the district court's response to defense counsel's objection "caution[ing] [the prosecution] not to do that" was "the equivalent of sustaining the objection").

¶ 64 The trial court's admonition was sufficient to cure any potential prejudice to Carian. Accordingly, we discern no error and conclude that reversal of his conviction of attempt to influence a public servant is not warranted. *People v. Rojas*, 181 P.3d 1216, 1224 (Colo. App. 2008); *People v. Suazo*, 87 P.3d 124, 128 (Colo. App. 2003).

## VI. Conclusion

¶ 65 The judgment on Carian's forgery conviction is vacated, and the judgment on his attempt to influence a public servant conviction is affirmed.

JUDGE ROMÁN and JUDGE LICHTENSTEIN concur.